THE STATE OF OHIO, APPELLEE, *v.* DICKERSON, APPELLANT.

[Cite as State *v.* Dickerson (1989), 45 Ohio St. 3d 206.]

(No. 88-662—Submitted May 10, 1989—Decided September 6, 1989.)

*Anthony G. Pizza,* prosecuting attorney, and *Dean P. Mandross,* for appellee.

*Fritz Byers,* for appellant.

SWEENEY, J. Pursuant to R.C. 2929.05(A), this court must undertake

a three-step analysis in reviewing the instant death penalty case. First, we will consider the specific issues raised by appellant with regard to the proceedings below. In so doing, we will review all of the appellant's propositions of law even though some may be deemed to have been waived since they were not raised below. Second, we will independently weigh the aggravating circumstances of this case against any and all factors which mitigate against the imposition of the death sentence. Third, we will independently consider whether appellant's sentence is disproportionate to the penalty imposed in similar cases.

In his first proposition of law, appellant argues that R.C. 2929.03(D)[1] violates the constitutional principle of "reasonable definiteness" in death penalty statutes announced in *Furman* v. *Georgia* (1972), 408 U.S. 238. Appellant contends that while the statute in issue prescribes a burden of proof for a mitigation hearing tried before a jury, no burden of proof is prescribed for a mitigation hearing conducted before a three-judge panel. As a consequence, appellant asserts that the burden of proof implemented by a three-judge panel in a mitigation proceeding will vary depending on the standard of proof selected by the particular panel. In support of his argument, appellant submits three sentencing opinions rendered by separate three-judge panels which he claims applied differing standards of proof in mitigation hearings: *State* v. *Forney* (Oct. 19, 1982), Summit C.P. No. 82-04-0443(A), unreported; *State* v. *Stumpf* (Sept. 28, 1984), Guernsey C.P. No. 9684, unreported; and *State* v. *Van Hook* (Aug. 8, 1985), Hamilton C.P. No. B-851389, unreported. It is appellant's contention that while the *Van Hook* panel applied the "beyond a reasonable doubt" standard in the mitigation proceeding therein, it does not appear that the panels in *Forney* and *Stumpf* applied such a standard.

Upon a careful review of the opinions cited by appellant, it appears that the panels in *Forney* and *Stumpf* did not articulate the standard of proof applied in their determinations, whereas the panel in *Van Hook* clearly announced its application of the "beyond a reasonable doubt" standard. However, the inference that the courts applied a lower standard of proof in *Forney* and *Stumpf* is less compelling than the inference that the courts correctly applied the "beyond a reasonable doubt" standard of proof.

Nevertheless, in the assessment of the constitutionality of R.C. 2929.03 (D), it is axiomatic that all legislative enactments enjoy a presumption of constitutional validity. See, *e.g.*, *Mominee* v. *Scherbarth* (1986), 28 Ohio St. 3d 270, 274, 28 OBR 346, 349, 503 N.E. 2d 717, 720. In addition, a statute should be construed in a manner that upholds the constitutionality of the

---

[1] Specifically, appellant assails R.C. 2929.03(D)(3), which provides in relevant part:

"Upon consideration of the relevant evidence raised at trial, the testimony, other evidence, statement of the offender, arguments of counsel, and, if applicable, the reports submitted to the court pursuant to division (D)(1) of this section, if, after receiving pursuant to division (D)(2) of this section the trial jury's recommendation that the sentence of death be imposed, the court finds, by proof beyond a reasonable doubt, or if the panel of three judges unanimously finds, that the aggravating circumstances the offender was found guilty of committing outweigh the mitigating factors, it shall impose sentence of death on the offender. * * *"

enactment, if at all possible. *State v. Sinito* (1975), 43 Ohio St. 2d 98, 101, 72 O.O. 2d 54, 56, 330 N.E. 2d 896, 898. Moreover, when asked to interpret a statute, a court should consider the statute in its entirety. See *Richards* v. *United States* (1962), 369 U.S. 1, 11.

In our view, all the foregoing considerations compel a finding that R.C. 2929.03(D) is indeed constitutional, especially when the statute is read in its entirety. R.C. 2929.03(D)(1) provides in relevant part:

"*  *  * The prosecution shall have the burden of proving, by proof beyond a reasonable doubt, that the aggravating circumstances the defendant was found guilty of committing are sufficient to outweigh the factors in mitigation of the imposition of the sentence of death."

Clearly, the foregoing standard of proof in mitigation hearings embodied in R.C. 2929.03(D) applies equally, regardless of whether the case is tried before a jury or a three-judge panel. Even if we were to assume, *arguendo,* that R.C. 2929.03(D)(3) is ambiguous with respect to the applicable standard of proof in a mitigation hearing conducted before a three-judge panel, the language of R.C. 2929.03(D)(1) resolves any such alleged ambiguities. Since R.C. 2929.03(D) is not unconstitutionally vague in this context, we find appellant's first proposition of law to be without merit.

In appellant's second proposition of law, he contends that his jury trial waiver was not knowingly and intelligently entered because the trial court failed to inform him that a three-judge panel may establish a lower standard of proof at the mitigation hearing and thereby increase his risk of obtaining a death sentence.

Given our disposition concerning appellant's first proposition of law, the appellant's argument here is also without merit. As mentioned before, the standard of proof in a mitigation hearing is the same (*i.e.,* beyond a reasonable doubt) regardless of whether the hearing is conducted before a jury or a three-judge panel. Therefore, since the standard of proof in a mitigation hearing is not lessened when the hearing takes place before a three-judge panel, we cannot say that appellant's jury trial waiver in this context was not knowingly and intelligently entered. Accordingly, appellant's second proposition of law is not well-taken.

In his third proposition of law, appellant asserts that his jury trial waiver was compromised upon his subsequent discovery that one of the members of the three-judge panel presided in a prior criminal proceeding in which he was involved. Appellant contends that his expressed concern about the impartiality of this particular judge also implied a hesitancy about his jury trial waiver. Appellant submits that the trial court erred in failing to inform him of his right to withdraw the jury trial waiver, and that the court further erred in failing to directly inquire whether he still desired to waive his right to a trial by jury.

Upon a careful review of the record, we find that there is no indication, either express or implied, that appellant desired to withdraw his jury trial waiver. On the morning that appellant's trial began, defense counsel informed the presiding judge of his concern regarding one of the other judges on the panel. The record indicates the court's first order of business that day was to confirm that appellant had withdrawn his earlier plea of not guilty by reason of insanity. The court then confirmed that appellant still desired to waive his right to a trial by jury. The court next discussed

the appellant's concern over the impartiality of the judge in question, who responded that he did not "specifically recall" appellant. The presiding judge then invited objection by appellant to the judge in question or to any other member of the three-judge panel. Appellant, through counsel, responded that he had no objection to any of the judges on the panel. In our view, there is nothing in the record that would suggest in any manner that appellant desired to withdraw his waiver to a jury trial. Contrary to the contentions of appellant, we believe that the record does indeed contain "persuasive evidence" of a "knowing, intelligent, and voluntary" waiver on the morning the trial began. See *Humphrey* v. *Cady* (1972), 405 U.S. 504, 517. Accordingly, we find appellant's third proposition of law to be unmeritorious.

Appellant's next two propositions are interrelated and thus will be considered together. In the fourth proposition of law submitted before this court, appellant asserts that his death sentence should be vacated because the three-judge panel applied the incorrect standard in determining whether the mitigating factor of diminished capacity (R.C. 2929.04[B][3]) had been established. In his fifth proposition of law, appellant contends that such an error cannot be corrected by the independent review of death penalty cases by appellate courts that is mandated in R.C. 2929.05.

In assailing the trial court in this regard, appellant argues that the court implemented the standard for the defense of insanity instead of the standard for the mitigating factor of diminished capacity. Appellant submits that the confusion of the trial court in this vein is evidenced by the court's admission of the psychiatrists' reports concerning appellant's sanity.

In *State* v. *Staten* (1969), 18 Ohio St. 2d 13, 47 O.O. 2d 82, 247 N.E. 2d 293, this court described legal insanity as a "disease or other defect" of the mind that so impairs the mind of the accused that at the time of the criminal act, the accused either "did not know that such act was wrong" or "did not have the ability to refrain from doing that act." *Id.* at paragraph two of the syllabus.

R.C. 2929.04(B)(3) provides the standard for the mitigating factor of diminished capacity as follows:

"Whether, at the time of committing the offense, the offender, because of a mental disease or defect, lacked substantial capacity to appreciate the criminality of his conduct or to conform his conduct to the requirements of the law[.]"

A clear reading of the foregoing standards indicates recognition of a higher standard for the defense of insanity than the standard established for the mitigating factor of diminished capacity. Insanity requires absolute inability, whereas the mitigating factor of diminished capacity only requires the lack of substantial capacity. See, generally, *State* v. *Wilcox* (1982), 70 Ohio St. 2d 182, 24 O.O. 3d 284, 436 N.E. 2d 523.

Nevertheless, we do not believe that appellant's arguments in this area are worthy of merit. The psychiatrists' reports on appellant's competency and sanity did in fact contain information relevant to the determination of the mitigating factor of diminished capacity. The trial court's finding that diminished capacity had not been established can be explained by the fact that it simply rejected the expert testimony of the psychiatrists. Expert testimony, even when uncontradicted, is not necessarily conclusive. The trial court panel, in its role as fact-finder, may very well have found the testimony of the psychiatric experts was

adequately rebutted by skillful cross-examination by the prosecutor as well as by the testimony of lay witnesses. See *United States* v. *Mota* (C.A. 5, 1979), 598 F. 2d 995. Such a conclusion is bolstered by the language used by the trial court in its mitigation opinion:

"In weighing the psychiatric testimony the Court used the standards required by law, weighing their testimony by the same standards of credibility as other witnesses. Evaluating their opinions and the observations of lay witnesses against the uncontroverted evidence regarding the actions of the defendant before, during and after he murdered the two victims, the Court finds that the defendant failed to establish by a preponderance of the evidence mental disease or defect that would cause the defendant to lack substantial capacity to appreciate the criminality of his conduct or to conform his conduct to the requirements of the law."

Although the trial court *may* have made a mistake in its factual determination respecting the existence of appellant's diminished capacity, we believe that the court did apply the correct standard in making that determination. Therefore, we overrule appellant's fourth proposition of law.

Even if we were to assume, *arguendo*, that the trial court applied the stricter standard of the defense of insanity in considering the evidence of the mitigating factor of diminished capacity, we find that such an error was harmless beyond a reasonable doubt. First, the trial court found that even if diminished capacity had been established, the aggravating circumstances would outweigh it beyond a reasonable doubt. Second, the independent review by the court of appeals effectively cured the apparent error of the sentencing court. As this court held in paragraph two of the syllabus in *State* v. *Holloway* (1988), 38 Ohio St. 3d 239, 527 N.E. 2d 831, the independent weighing process at each appellate level provides a procedural safeguard against the arbitrary imposition of the death penalty.

In *Holloway*, we found that the trial court erred by applying an incorrect definition of "mitigating factors" that may have influenced the manner in which it reviewed the mitigating factors. However, this court found such error to be harmless because the independent review by the court of appeals cured the error in the trial judge's sentencing opinion. *Id.* at 242, 527 N.E. 2d at 835.

In the cause *sub judice,* the independent review by the court of appeals cured any error that may have been committed by the trial court in the sentencing of appellant. In considering the mitigating evidence, the court of appeals below found that the single mitigating factor of diminished capacity had in fact been established. Nevertheless, in weighing the aggravating circumstances against the mitigating factors, the appellate court found that the aggravating circumstances outweighed the mitigating factor of diminished capacity beyond a reasonable doubt. Therefore, regardless of whether the error of the trial court was one of fact or law, such error was rendered harmless beyond a reasonable doubt. Accordingly, appellant's fifth proposition of law is overruled.

In his sixth proposition of law, appellant contends that the three-judge panel improperly considered four nonstatutory circumstances in its penalty determination under R.C. 2929.03(C)(2)(a). Specifically, appellant argues that the trial court improperly considered the method of killing, the youth of one of the victims, the number of shots fired, and the range at which

thóse shots were fired. He argues, in effect, that these considerations rendered his sentencing arbitrary and capricious, and thus destroyed the constitutionally required narrowing function of the legislatively defined factors by expanding the number of aggravating circumstances beyond that provided by statute.

We find that appellant's argument fails to raise a legitimate issue of prejudicial error upon an objective reading of the judgment entries and opinion filed by the trial court. Therein, the aggravating circumstances and mitigating factors are clearly identified. However, it appears that the discussion of the method of killing, the number of shots fired, the range at which the shots were fired, and the youth of one of the victims merely served the purpose of establishing why the aggravating circumstances outweighed the mitigating factors beyond a reasonable doubt.

In *State* v. *Stumpf* (1987), 32 Ohio St. 3d 95, 512 N.E. 2d 598, this court held that a trial court's consideration of the nature and circumstances was not improper. Therein we observed as follows:

"Reading R.C. 2929.03(F) and 2929.04(B) *in pari materia*, it would be illogical to require a three-judge panel to consider the nature and circumstances of the offense in making its decisions whether the aggravating circumstances were sufficient to outweigh the mitigating factors, yet to forbid that panel from relying upon and citing such nature and circumstances as reasons for its decision." *Id.* at 99, 512 N.E. 2d at 604.

Similarly, it would be illogical to require the trial court to state "* * * the reasons why the aggravating circumstances the offender was found guilty of committing were sufficient to outweigh the mitigating factors" pur-

suant to R.C. 2929.03(F), and then forbid the panel from relying on its reasons. In our view, a trial court's recitation of the reasons why the aggravating circumstances outweigh the mitigating factors in a particular case is not the same as weighing those reasons as aggravating circumstances; it is simply an explanation of the court's reasoning processes, which is required under R.C. 2929.03(F).

In addition, R.C. 2929.03(D)(1) imposes a duty on "* * * [t]he court [to] * * * consider * * * any evidence raised at trial that is relevant to the aggravating circumstances the offender was found guilty of committing * * *."

In the instant cause, the details surrounding the two aggravated murders were relevant to the aggravating circumstance that the offense was part of a course of conduct involving the *purposeful* killing of, or attempt to kill, two or more persons by the offender. Because the trial court is required to consider the evidence, it logically follows that the court should be permitted to discuss its consideration of the evidence in its opinion. Therefore, we find appellant's sixth proposition of law to be unmeritorious.

In his seventh proposition of law, appellant raises four separate arguments which challenge the adequacy of the trial court's sentencing opinion filed pursuant to R.C. 2929.03(F).

First, appellant contends that the sentencing opinion does not state which aggravating circumstances he was found guilty of committing. R.C. 2929.03(F) specifically requires the sentencing court to state its findings as to "* * * the aggravating circumstances the offender was found guilty of committing * * *."

A careful review of the sentencing opinion reveals that it does state that the defendant was found guilty of "each and every one of the specifica-

tions charging aggravating circumstances * * *." Although not stated in the words of the statute, the specifications are incorporated by reference to the indictment. While we do not condone such a practice, we do not believe that it affects the independent review undertaken by the appellate courts. Thus, even if we were to assume that the failure of the trial court to specifically list the specification by statute number or description constituted error, we believe that such error was rendered harmless beyond a reasonable doubt.

In his second argument concerning the adequacy of the sentencing opinion, appellant contends that the trial court weighed each mitigating factor individually, rather than collectively, against the aggravating circumstances as is required by R.C. 2929.03(F). While this practice is clearly improper, it is difficult to envision how this has prejudiced appellant. Since the trial court found that two aggravating circumstances for each count had been proven beyond a reasonable doubt, and that none of the mitigating factors had been established, the result would be that the aggravating circumstances outweighed the mitigating factors beyond a reasonable doubt, regardless of the procedure used.

Third, appellant argues that the trial court ignored significant evidence, including expert testimony, that indicated "* * * it is unlikely that the offense would have been committed, but for the fact that the offender was under duress, coercion, or strong provocation[.]" R.C. 2929.04(B)(2). Contrary to appellant's contention, however, the trial court did consider the evidence in terms of the mitigating factors listed under R.C. 2929.04(B)(2) and (B)(3). As to subsection (B)(3), the court found the evidence unpersuasive. As to subsection (B)(2), the court found

that stress occasioned by the death of appellant's mother, the breakup of his seven-year relationship with his girlfriend, and his personality disorder did not constitute the "duress, coercion, or strong provocation" that is required by this mitigating factor.

Lastly, appellant contends that the trial court failed to state the reasons why it found that the aggravating circumstances outweighed the mitigating factors beyond a reasonable doubt. In this regard, the court's opinion does not appear to be in strict compliance with R.C. 2929.03(F). Nevertheless, when a court finds that aggravating circumstances were proven beyond a reasonable doubt and that no mitigating factors were established, the failure to explain its obvious conclusion is not prejudicial error. See *State* v. *Maurer* (1984), 15 Ohio St. 3d 239, 247, 15 OBR 379, 386, 473 N.E. 2d 768, 778. Moreover, any error in omission is correctable by the independent review of the appellate courts. *Id.*

Accordingly, appellant's seventh proposition of law is overruled.

In his eighth proposition of law, appellant argues that the psychiatric reports on his sanity were erroneously admitted into evidence because they were irrelevant to the mitigating factor of diminished capacity. Once again, appellant contends that the trial court confused the standards for the defense of insanity and the mitigating factor of diminished capacity. Appellant argues that the court used the reports on sanity as substantive evidence, thereby refuting the existence of appellant's diminished capacity.

Evid. R. 401 provides:

" 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable

than it would be without the evidence.''

Although the psychiatric reports were prepared in order to evaluate appellant's sanity, they contained information on which the psychiatrists relied in order to reach their expert opinions that the appellant lacked substantial capacity to appreciate the criminality of his conduct or to conform his conduct to the requirements of the law.

Significantly, neither psychiatrist reexamined appellant or prepared a mitigation report. In fact, Dr. Gottlieb testified that ''[t]he examination for whether — for mitigation is basically the same examination [as for sanity].'' The relevancy of Dr. Sherman's report is demonstrated by its content. Therein he diagnosed appellant as having a personality disorder of a mixed type, with aspects of anti-social and borderline personality, and concluded that there is ''some mitigating, psychiatric illness to this case.''

Both psychiatric reports, and particularly Dr. Sherman's report, are evidence having the tendency to make the existence of the mitigating factor of diminished capacity more probable than it would be without the evidence. Therefore, we believe that the reports were properly admitted as relevant evidence. Accordingly, appellant's eighth proposition of law is without merit.

In his ninth and tenth propositions of law, appellant argues that the sentence of death is inappropriate, as well as excessive and disproportionate to the penalties imposed in similar cases.

Inasmuch as this court is duty-bound to independently weigh the aggravating circumstances in this case against any and all factors which mitigate against the imposition of the death sentence, and to independently consider whether appellant's sentence is disproportionate to the penalties imposed in similar cases, we will defer exploration of appellant's contentions in this regard until after discussion of appellant's remaining propositions of law.

In his eleventh proposition of law, appellant contends that Crim. R. 11(C)(3), which grants the trial court discretion to dismiss the capital specifications in the interest of justice when the defendant pleads guilty or no contest, is unconstitutional. It is appellant's contention that Crim. R. 11(C)(3) affords the capital defendant who pleads guilty or no contest an additional way to ''avoid'' the death penalty while denying the same to the capital defendant who exercises his or her constitutional right to trial. Thus, appellant submits that a capital defendant is coerced to plead guilty or no contest in order to trigger the operation of Crim. R. 11(C)(3).

All of these arguments attacking the constitutionality of Crim. R. 11(C)(3) have been rejected by this court in *State* v. *Buell* (1986), 22 Ohio St. 3d 124, 138, 22 OBR 203, 215, 489 N.E. 2d 795, 808, and *State* v. *Bedford* (1988), 39 Ohio St. 3d 122, 132, 529 N.E. 2d 913, 923. As such, we overrule this proposition of law summarily. *State* v. *Poindexter* (1988), 36 Ohio St. 3d 1, 520 N.E. 2d 568, syllabus.

In his twelfth proposition of law, appellant contends that his conviction of the aggravated murder of Kevin McCoy is not supported by sufficient evidence because there was no evidence, as required by R.C. 2903.01(D), to prove that he specifically intended to cause McCoy's death.

A review of the record reveals that McCoy was shot twice by appellant. The first shot was fired into McCoy's chest as he charged the bathroom window through which appellant was mak-

ing a surreptitious entry. The second shot was fired into the back of McCoy's head as he lay wounded by the first shot in the hallway near the bathroom.

Appellant argues that there is insufficient evidence that he intended to kill McCoy with the first shot, insufficient evidence that McCoy was alive at the time of the second shot, and some evidence that the first shot was fatal. Consequently, appellant argues that while the evidence may support a conviction for involuntary manslaughter, it is insufficient to support a conviction of aggravated murder.

In determining whether there is sufficient evidence to support a conviction, the relevant inquiry is "* * * whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (Emphasis *sic.*) *Jackson* v. *Virginia* (1979), 443 U.S. 307, 319. Accord *State* v. *Thomas* (1980), 61 Ohio St. 2d 223, 15 O.O. 3d 234, 400 N.E. 2d 401; *State* v. *Bridgeman* (1978), 55 Ohio St. 2d 261, 9 O.O. 3d 401, 381 N.E. 2d 184.

In the cause *sub judice,* the only element in question is whether appellant had the specific intent to cause the death of Kevin McCoy. Contrary to appellant's assertion, we believe that there is sufficient evidence of his specific intent to cause McCoy's death, regardless of which shot is considered to have been the fatal one. If the second was the fatal shot, its point-blank range clearly indicates that appellant specifically intended to kill McCoy. If, on the other hand, the first shot is considered as the fatal one, appellant's specific intent to kill McCoy with the first shot can be inferred from the nature of the second shot, as well as other evidence. In its opinion, the court of appeals held that the first shot was the fatal shot.

In our view, the three-judge panel, as the trier of fact, could have reasonably found that appellant specifically intended to kill McCoy by inference from the direct evidence that appellant shot McCoy in the back of his head point-blank within minutes of his initial shot, or from the evidence that the first shot was fired into the middle of McCoy's chest at close range. Accordingly, we find appellant's twelfth proposition of law to be without merit.

In his thirteenth proposition of law, appellant contends that the court of appeals below decided his assignment of error asserting the denial of effective assistance of counsel, when the record did not contain sufficient facts upon which to decide the issue.

The record indicates that on July 28, 1986, appellant filed a motion in the court of appeals to augment the record with affidavits in support of his claim of denial of effective assistance or, in the alternative, to remand to the trial court to supplement the record. On August 15, 1986, without obtaining a ruling on his motion, appellant filed his merit brief in the court of appeals raising, among other assignments of error, his claim of ineffective assistance of counsel.

We believe that appellant's contention that the court of appeals decided the assignment of error without sufficient facts upon which to decide the issue is unfounded. As of September 17, 1987, the date the relevant entry was journalized, appellant knew that the court of appeals had denied his motion to supplement the record with affidavits. With that information, appellant had ample opportunity to withdraw the assignment of error before the issue was decided on February 12, 1988, but did not. This fact alone strongly suggests that appellant wanted to have the issue decided.

App. R. 12(A) provides in pertinent part:

"* * * All errors assigned and briefed shall be passed upon by the court in writing, stating the reasons for the court's decision as to each such error."

In overruling the assignment of error and finding that appellant failed to sustain his burden of proving that counsel's performance was deficient, we hold that the court of appeals fully complied with App. R. 12(A). Thus, appellant's thirteenth proposition of law is without merit.

Appellant's fourteenth and final proposition of law assails the court of appeals' disposition in two ways. First, appellant contends that proportionality review should include cases where the death penalty was sought but not obtained, or where the death penalty could have been sought but was not. Second, appellant argues that the appellate court wrongly refused to remand the cause to the trial court to allow him to adduce evidence of racial bias in the application of the death penalty in his case.

Appellant's first argument under this proposition of law has been rejected by this court on numerous occasions. See *State* v. *Jenkins* (1984), 15 Ohio St. 3d 164, 209, 15 OBR 311, 349-350, 473 N.E. 2d 264, 304; *State* v. *Steffen* (1987), 31 Ohio St. 3d 111, 31 OBR 273, 509 N.E. 2d 383, paragraph one of the syllabus; *State* v. *Byrd* (1987), 32 Ohio St. 3d 79, 86, 512 N.E. 2d 611, 619; *State* v. *Clark* (1988), 38 Ohio St. 3d 252, 263, 527 N.E. 2d 844, 855; *State* v. *Benner* (1988), 40 Ohio St. 3d 301, 318, 533 N.E. 2d 701, 718. As we explained previously, "[i]t is * * * logical that only convictions of a capital crime are relevant for comparison purposes, since such cases are necessarily so qualitatively different from all others that comparison with non-capital offenses would be a profitless exercise * * *." *Steffen, supra,* at 123, 31 OBR at 284, 509 N.E. 2d at 395.

With regard to appellant's second argument, we do not believe that the court of appeals abused its discretion in denying his motion to remand to the trial court to take additional evidence of racial animus or bias. In considering similar arguments in *McCleskey* v. *Kemp* (1987), 481 U.S. 279, the United States Supreme Court explained that in order to prevail, a defendant "* * * must prove that the decisionmakers in *his* case acted with discriminatory purpose." (Emphasis *sic.*) *Id.* at 292. Thus, appellant's argument depends on whether the evidence, as proffered, is sufficient to prove that the prosecutor did not, in this context, engage in plea negotiations, at least in part due to appellant's race.

In support of his allegation, appellant offered little more than statistics based on two Lucas County cases. However, such arguments based on mere statistics have been consistently rejected by this court. See *Steffen, supra,* at 145, 31 OBR at 285, 509 N.E. 2d at 395-396; *Byrd, supra,* at 86, 512 N.E. 2d at 619. We find nothing in appellant's proffer suggesting that the county prosecutor acted with discriminatory purpose. The prosecution's decision to forgo plea negotiations can be neutrally explained by the strength of the state's case against appellant, the apparent execution-style of the murders, the young age of one of the victims, and/or other pertinent factors.

In any event, even if the court of appeals erred in denying appellant's motion to remand for an evidentiary hearing, such error was harmless beyond a reasonable doubt. Accordingly, appellant's fourteenth proposition of law is not well-taken.

Having reviewed the various prop-

ositions of law raised by appellant, and having found none of them to be meritorious, we next turn to our responsibility of independently weighing the aggravating circumstances against any and all mitigating factors of this case.

In the cause *sub judice*, two aggravating circumstances were proved beyond a reasonable doubt as to each aggravated murder count: (1) that the offense was part of a course of conduct involving the purposeful killing or attempt to kill two or more persons by appellant; and (2) that the appellant, as the principal offender, committed the offense of aggravated murder while he was committing or attempting to commit aggravated burglary.

Against these, the mitigating factors presented by appellant must be weighed. In addition to his unsworn statement, appellant presented eight witnesses in mitigation. The bulk of this evidence is relevant to the mitigating factor of diminished capacity set forth in R.C. 2929.04(B)(3).

Psychiatrists Marvin Gottlieb and Thomas G. Sherman testified that at the time of committing the offenses, the appellant, due to a mental defect, lacked substantial capacity to conform his conduct to the requirements of the law. The psychiatrists also agreed that it is unlikely that the offense would have been committed but for the fact that appellant was under duress or provocation.

Appellant's sister and his estranged wife testified concerning the severe depression that appellant suffered following the death of his mother.

Appellant's aunt and uncle testified that they received telephone calls from appellant between 3:00 and 4:00 a.m. the morning of the murders and reported that appellant was upset, crying, and thought that Denise Howard and Kevin McCoy were going to "get him."

Ernest Jackson, Sr., the assistant pastor of the New Light Baptist Church, testified that he had encouraged appellant to get psychiatric help. Franklin Benschoter testified that he had visited appellant at the jail and had observed his sorrow and remorse.

Upon a careful review of the mitigating evidence, it appears that some evidence was adduced in regard to the mitigating factors found in R.C. 2929.04(B)(2), (B)(3), and (B)(7).

With respect to the mitigating factor set forth in R.C. 2929.04(B)(2), "* * * that the offender was under duress, coercion, or strong provocation[,]" it appears that although both psychiatrists testified that it is unlikely that the offense would have been committed but for the fact that appellant was under duress or provocation, we do not believe that the evidence adduced supports such a finding. While there was testimony to support a finding that appellant was suffering stress from the personal turmoil in his life, there is nothing to suggest that such stress and turmoil constituted the "duress, coercion, or provocation" required to find that this mitigating factor has been established.

With regard to the mitigating factor of diminished capacity set forth in R.C. 2929.04(B)(3), there was considerable lay and expert testimony in support thereof. The uncontroverted testimony of Drs. Gottlieb and Sherman seems particularly persuasive. Dr. Gottlieb diagnosed appellant as having a depression with dysthymic disorders and personality problems with antisocial and paranoid traits. Dr. Sherman diagnosed appellant as having a personality disorder with aspects of antisocial personality and borderline personality. Both psychiatrists concurred that, at the time of the offenses,

appellant, due to a mental defect, lacked substantial capacity to conform his conduct to the requirements of the law. Lay testimony consistent with this expert opinion was also adduced.

Since this mitigating factor was clearly established, it is entitled to considerable weight.

With regard to "[a]ny other factors that are relevant to the issue of whether the offender should be sentenced to death[,]" R.C. 2929.04(B)(7), the evidence of stress occasioned by the death of appellant's mother and the termination of his seven-year relationship with Denise Howard, who was the mother of his two children, should be considered. While these experiences are unfortunate, they are not uncommon. It takes no citation of authority to state that many other people have endured similar experiences without resort to lawlessness. Therefore, we do not believe that this mitigating factor has been established.

Therefore, in weighing the mitigating factor of appellant's diminished capacity against the aggravating circumstances that the offense was part of a course of conduct involving the killing of two persons, and that the offense occurred during the commission of an aggravated burglary, we hold that the aggravating circumstances outweigh the mitigating factor beyond a reasonable doubt. Accordingly, we find the sentence of death to be appropriate in this case.

Finally, this court must decide whether the sentence of death imposed here is excessive or disproportionate to the sentence in similar cases. We hold that the death sentence imposed here is proportionate to the sentence approved for the aggravated murder in *Bedford, supra.*

In *Bedford,* the death sentence was imposed and affirmed for the commission of aggravated murder where the offense was part of a course of conduct involving the purposeful killing of or attempt to kill two or more persons by a spurned lover. A careful review of *Bedford, supra,* as well as other cases imposing the death penalty where the defendant committed aggravated murder as part of a course of conduct, see, *e.g., Poindexter, supra,* indicates that the death sentence imposed herein is neither excessive nor disproportionate.

In conclusion, we first find that there is no merit to any of the specific propositions of law raised by appellant concerning his trial or appeal to the court of appeals that would compel a reversal of his convictions of the crimes described. Second, we find that the aggravating circumstances outweigh the mitigating factors presented by appellant, beyond a reasonable doubt. Third, we find the sentence of death to be appropriate in this case, since it is neither excessive nor disproportionate to the penalty imposed in similar cases. Therefore, in accordance with R.C. 2929.05(A), we affirm the convictions and sentence of death in this cause.

Accordingly, the judgment of the court of appeals is hereby affirmed.

*Judgment affirmed.*

MOYER, C.J., HOLMES, DOUGLAS, H. BROWN and MAHONEY, JJ., concur.

WRIGHT, J., concurs in judgment only.

EDWARD J. MAHONEY, J., of the Ninth Appellate District, sitting for RESNICK, J.