DECISION
Defendant-appellant, Andrew J. Morrison, appeals from a judgment of the Franklin County Court of Common Pleas determining that he should be classified as a sexual predator pursuant to R.C. Chapter 2950, Ohio's sex offender registration and notification statute.
Appellant was convicted in 1990 on two counts of kidnapping and three counts of rape, each count including a firearm specification. The charges against appellant arose out of two separate incidents involving different victims. All charges against appellant were consolidated and heard in a single trial.
The first victim, Melissa Stewart, age sixteen at the time of the crime, testified that at approximately 2 a.m., on February 23, 1990, she was attempting to hitchhike to her mother's home from the vicinity of the Goody Boy restaurant on North High Street in Columbus, Ohio. Stewart was not on good terms with her mother at the time and had been staying at her boyfriend's home, but on the evening in question she had decided to return to her mother's house. Stewart accepted a ride from appellant who agreed to drive her where she needed to go. Instead of driving Stewart northward to her mother's house, however, appellant commenced driving south. When Stewart protested, appellant told her that he needed to purchase gasoline for his truck. Stewart was initially not suspicious, but when appellant entered the freeway he pulled a gun on her and told her if she tried to jump out of the vehicle he would kill her. While driving south on I-71 out of Columbus, appellant forced Stewart at gunpoint to undress.
After driving for some distance on the interstate and country roads south of Columbus in an area not familiar to Stewart, they arrived at a house in a rural area. Appellant told Stewart to lie down in the grass while he tied her up with rope. Appellant then untied her and took Stewart into a bedroom of the house where he forced her to perform fellatio, and then vaginally and anally raped her. Although the only lights illuminating the bedroom were a television set that was on and indirect light from a bathroom light that was on down the hall, Stewart observed characteristic tattoos on appellant's chest and forearm, which she subsequently included in her description of appellant to police.
Appellant eventually walked Stewart back out to the truck and permitted her to get dressed. Appellant then drove Stewart to a gas station and released her. At the gas station, Stewart immediately requested the attendant call police. When the police arrived she gave them a description of her assailant and the events she had just experienced. Stewart did not, however, at that time give police her actual name because she had juvenile charges pending against her and was afraid of being sent to juvenile detention.
After appellant's arrest, Stewart subsequently identified appellant as her assailant from a photo array presented to her by Columbus police. Stewart also identified appellant in open court.
The second victim, Emily Jones, testified at trial that she was walking near her home when appellant stopped his truck to ask her for directions, then forced her into the vehicle, threatening her with a handgun. As they drove, appellant stated his intent to have sex with her against her will and ordered her to undress as they drove south on I-71 out of town. Fearing for her life, Jones jumped from the truck as it slowed to exit the freeway. A medical report found in the record indicates that Jones, who was approximately twenty-four weeks pregnant at the time, suffered serious abrasions and lacerations when she jumped from the truck, and possibly would have to undergo skin grafts.
Appellant testified, with respect to Emily Jones, that he met her on Main Street and that she agreed to accompany him to his home in Grove City, south of Columbus, to engage in sex for money. Appellant testified that as they drove to his home Jones changed her mind, and appellant agreed to take her back to Columbus. As appellant slowed to take an exit that would allow him to turn around, Jones suddenly jumped from the truck. Appellant then got out and asked her if she was alright but when Jones merely told him to go away, appellant got back into his truck and drove off.
With respect to Stewart's testimony, appellant denied any role in her abduction and rape. Appellant believed his only prior contact with Stewart had been when she solicited him for prostitution in the parking lot of a fast food restaurant on North High Street, near the Goody Boy restaurant, on an occasion when appellant had been in the vicinity looking for work at Ohio State University. Appellant acknowledged picking up prostitutes on two prior occasions in the North High Street area of Columbus. Appellant denied showing a handgun or having one in his possession during the episode with Emily Jones.
Testimony by police officers established that appellant was arrested a few days after Jones' abduction, based upon information provided to police by a North High Street area prostitute that a man in a red pick-up truck had been abducting and raping prostitutes using a gun and showing a badge. At the time of his arrest, appellant had in his truck a pair of handcuffs, a ski mask, a "butterfly" knife, and a police-style master-at-arms badge issued to appellant during his service in the Navy.
The jury returned a verdict of guilty on one count of kidnapping with respect to Emily Jones and three counts of rape and one count of kidnapping with respect to Melissa Stewart. The trial court imposed concurrent five to twenty-five year terms on these last four charges, with an additional three years on a firearms specification, all to be served consecutively to a five to twenty-five year sentence, plus an additional three years for a firearm specification, imposed for the kidnapping of Emily Jones. Appellant's conviction and sentence were affirmed upon appeal to this court. State v. Morrison (Nov. 19, 1991), Franklin App. No. 91AP-91, unreported.
Appellant remained incarcerated when R.C. Chapter 2950 became effective in 1997. Pursuant to R.C. 2950.09(C), the Ohio Department of Rehabilitation and Correction recommended that appellant be adjudicated a sexual predator, and appellant was returned for a hearing before the trial court.
At the hearing, the state's evidence consisted of the indictments from the underlying offenses, appellant's prison file, a copy of the post-sentence investigation report, and excerpted trial transcripts containing the testimony of appellant and Melissa Stewart.
Counsel for appellant offered evidence consisting of a certificate demonstrating appellant's completion of the Polaris Program for sex offenders while incarcerated, certificates demonstrating completion of other courses while at the institution, appellant's high school diploma, and a college transcript demonstrating appellant's participation and completion of college — level courses offered by Hocking Technical College while incarcerated. Appellant's counsel also introduced military documents reflecting appellant's meritorious military service, including his honorable discharge and letters of commendation reflecting appellant's duties as a highly skilled welder during his Navy service from 1985 to 1989. Finally, defense counsel introduced an extensive psychological assessment and report prepared by Kristin Haskins, Ph.D., reflecting her opinion of appellant's general psychological characteristics and the low likelihood that appellant would reoffend. Dr. Haskins also testified personally at the hearing.
Despite Dr. Haskins' strongly favorable testimony, the court nonetheless concluded after the hearing that appellant should be adjudicated a sexual predator. The court based its decision on the recurrent nature of appellant's conduct, the paraphernalia found in appellant's truck at the time of his arrest which indicated that he was prepared to commit further crimes, and the court's perception that appellant continued to be less than truthful regarding his commission of the crimes.
Appellant has timely appealed and brings the following assignment of error:
 The evidence before the court was legally insufficient to establish that appellant was a sexual predator, subject to the lifetime registration and community notification provisions of Chapter 2950 of the Ohio Revised Code. Furthermore, such a finding was against the manifest weight of the evidence.
Appellant's assignment of error thus asserts that the judgment classifying him as a sexual predator was not supported by sufficient evidence to meet the legal standard of proof or, in the alternative, was against the manifest weight of the evidence. As a threshold issue in this case, we note that our appellate standard of review when addressing manifest weight and sufficiency of the evidence claims in an appeal from a sexual predator determination is a matter of some debate which has not been uniformly resolved in Ohio's appellate districts. This court has, with some decree of equivocation, characterized predator hearings as essentially civil in nature. State v. Newton (June 11, 1998), Franklin App. No. 97AP-1353, unreported; State v. Harden (Oct. 29, 1998), Franklin App. No. 98AP-223, unreported. This characterization of the proceedings as civil is largely based on State v. Cook (1998), 83 Ohio St.3d 404. While Cook did not explicitly employ the term "civil" in assessing the nature of predator hearings, the Ohio Supreme Court did conclude that, in contrast to a formal criminal trial, the rules of evidence would be relaxed to permit admission of reliable hearsay. Id. at 425. Nonetheless, because predator proceedings necessarily arise in the context of an antecedent criminal conviction, and are largely concerned with an assessment of past criminal conduct by a defendant and his potential for future criminal conduct, we have been reluctant to abandon entirely the due process notions and concomitant procedural safeguards inherent in criminal proceedings. These have included, for example, the right to effective assistance of counsel and thus the opportunity to seek a reopening of appeal pursuant to App.R. 26(B), normally applicable only to appeals from criminal proceedings. State v. Harley (May 16, 2000), Franklin App. No. 99AP-374, unreported.
Because this and other appellate courts have thus been reluctant to abandon all notions of criminal procedure in appeals from predator determinations, the question arises of whether appellant's manifest weight and sufficiency arguments should be met under the civil standard set forth under C.E. Morris Co. v. Foley Construction Co. (1978),54 Ohio St.2d 279, which tends to merge the concepts of sufficiency and manifest weight, or the more specific standard applied to criminal cases under State v. Thompkins (1997), 78 Ohio St.3d 380, in which a clear distinction is made between sufficiency arguments and manifest weight arguments. Under C.E. Morris, "[j]udgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence." In contrast, under Thompkins, a court of appeals addressing manifest weight arguments in an appeal from a criminal conviction will show less deference to the finder of fact's resolution of conflicting testimony, sitting as a "thirteenth juror":
 The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. * * * [Id. at 387.]
(Quoting State v. Martin (1983), 20 Ohio App.3d 172, 175.) With respect to sufficiency of the evidence, Thompkins states that "sufficiency is a test of adequacy. Whether the evidence is legally sufficient to sustain a verdict" to determine whether the case may go to the jury or support the jury verdict as a matter of law. Thompkins at 386. The manifest weight standard set forth in C.E. Morris, therefore, is much more akin to the sufficiency standard set forth in Thompkins, and, accordingly, more deferential to the determinations of the trial court, rendering reversal less likely.
As mentioned above, when balancing the declared civil nature of predator proceedings with the inherently criminal context in which they arise, appellate districts have reached different conclusions as to whether Thompkins or C.E. Morris should apply in reviewing manifest weight and sufficiency appeals. The majority of appellate districts, including this one, have chosen to apply Thompkins, albeit without (up to this point) any extensive discussion of the suitability of this standard. See, e.g., State v. Bolin (June 15, 2001), Montgomery App. No. 18605, unreported (Second Appellate District); State v. Liles (Jan. 5, 2001), Huron App. No. H-00-019, unreported (Sixth Appellate District); State v. Sims (June 27, 2001), Jefferson App. No. 99-JE-43, unreported (Seventh Appellate District); State v. Dell (Aug. 10, 2001), Ashtabula App. No. 99-A-0038, unreported, (Eleventh Appellate District). Our two most recent decisions on the questions have also adopted Thompkins without debate: State v. Thomas (Aug. 23, 2001) Franklin App. No. 00AP-1242, unreported; and State v. Golden (July 17, 2001), Franklin App. No. 00AP-1247, unreported. Contrary conclusions have been reached by at least one other Ohio appellate district: State v. Hunter (June 1, 2001), Hamilton App. No. C-000266, unreported, in which the First Appellate District concluded that C.E. Morris should apply based on the civil nature of predator proceedings.
Both to maintain consistency with our past decisions and to explicitly provide guidance for future arguments by parties in comparable cases, we accordingly align ourselves with the numerical weight of authority in Ohio and hold that the criminal standard set forth in Thompkins will apply when addressing manifest weight and sufficiency of the evidence arguments raised in an appeal from an R.C. Chapter 2950 proceeding.
R.C. 2950.01(E) defines a "sexual predator" as "a person who has been convicted of or pleaded guilty to committing a sexually oriented offense and is likely to engage in the future in one or more sexually oriented offenses." "Although the standard set forth in R.C. 2950.01(E) looks toward the defendant's propensity to engage in sexually oriented behavior in the future, a trier of fact may look at past behavior as well since past behavior is often an important indicator of future propensity." State v. Maye (1998), 129 Ohio App.3d 165, 173.
Under R.C. 2950.09(B), the trial court, in making its determination, should consider a number of enumerated factors when assessing a defendant's propensity to re-offend:
 (2) In making a determination under divisions (B)(1) and (3) of this section as to whether an offender is a sexual predator, the judge shall consider all relevant factors, including, but not limited to, all of the following:
(a) The offender's age;
 (b) The offender's prior criminal record regarding all offenses, including, but not limited to, all sexual offenses;
 (c) The age of the victim of the sexually oriented offense for which sentence is to be imposed;
 (d) Whether the sexually oriented offense for which sentence is to be imposed involved multiple victims;
 (e) Whether the offender used drugs or alcohol to impair the victim of the sexually oriented offense or to prevent the victim from resisting;
 (f) If the offender previously had been convicted of or pleaded guilty to any criminal offense, whether the offender completed any sentence imposed for the prior offense and, if the prior offense was a sex offense or a sexually oriented offense, whether the offender participated in available programs for sexual offenders;
 (g) Any mental illness or mental disability of the offender;
 (h) The nature of the offender's sexual conduct, sexual contact, or interaction in a sexual context with the victim of the sexually oriented offense and whether the sexual conduct, sexual contact, or interaction in a sexual context was part of a demonstrated pattern of abuse;
 (i) Whether the offender, during the commission of the sexually oriented offense for which sentence is to be imposed, displayed cruelty or made one or more threats of cruelty;
 (j) Any additional behavioral characteristics that contribute to the offender's conduct.
The state is required to show a future propensity to reoffend by clear and convincing evidence. R.C. 2950.09(B)(3):
 * * * Clear and convincing evidence is that measure or degree of proof which will produce in the mind of the trier of facts a firm belief or conviction as to the allegations sought to be established. It is intermediate, being more than a mere preponderance, but not to the extent of such certainty as is required beyond a reasonable doubt as in criminal cases. It does not mean clear and unequivocal. * * * [Emphasis sic.]
Cross v. Ledford (1954), 161 Ohio St. 468, 477.
Appellant's argument upon appeal, essentially, is that the extensive and detailed psychological evaluation of appellant prepared by Dr. Haskins, which concluded that appellant presented a low risk of reoffending, was essentially unrebutted by the state with comparable evidence of appellant's clinically assessable risk factors, and that the other evidence relied upon by the trial court in assessing appellant's likelihood of reoffending did not outweigh the conclusion reached in Dr. Haskins' report. We begin with the principle that "[e]xpert testimony, even when uncontradicted, is not necessarily conclusive." State v. Dickerson (1989), 45 Ohio St.3d 206, 210. A trier of fact may discount an expert's opinion, even if uncontradicted by testimony of another expert, so long as there exists an objectively discernable reason for doing so. State v. Brown (1983), 5 Ohio St.3d 133, 135. This basic principle has been applied to sexual predator determinations where the trial court has declined to accept a psychological expert's opinion that the defendant presented a low risk of reoffense. State v. Gardner (Nov. 16, 2000), Franklin App. No. 00AP-93, unreported. While Dr. Haskins' report in the present case certainly represents a thorough and persuasive assessment of appellant which should be accorded substantial weight in making a predator determination, we find that, in the present case, there is substantial contradictory evidence concerning appellant's likelihood of reoffending which could constitute an objectively discernable reason for rejecting Dr. Haskins' conclusions on this question.
Dr. Haskins' report observes that appellant shows no signs or symptoms of a serious mental illness or mental disability. Dr. Haskins did observe some "traits of longstanding personality pattern difficulties but they are not significant enough to warrant a formal diagnosis." (Dr. Haskins' report at 10.) Dr. Haskins found that appellant did not appear to have a significant substance abuse problem, and had adapted well to his incarceration, as evidenced by his favorable institutional record. Dr. Haskins also concluded that appellant had benefited from his completion of the Polaris Program in prison, and had developed "a far more realistic view of what constitutes a healthy relationship." (Dr. Haskins' report at 5.)
Dr. Haskins placed substantial emphasis on appellant's successful service in the Navy, and found that his skills as a welder would allow appellant to quickly secure employment when released, and make a smooth transition to becoming a productive member of society, which would reduce the risk of reoffending. Dr. Haskins also observed that appellant appeared to be very bright, personable, and could draw on strong support from family and friends.
Objective tests also yielded favorable results as interpreted by Dr. Haskins. Dr. Haskins was able, based upon various objective test results such as the Minnesota Multiphasic Personality Inventory-2 and the Millon Clinical Multiaxial Inventory-III, and the Hare Psychopathy Checklist, to give appellant a very favorable score indicating a low risk of committing further violent sexual offenses.
One very important aspect of Dr. Haskins' report must be examined, however; Dr. Haskins based her assessment of appellant on many factors, but viewed most of these in the light of appellant's own description of his conduct at the time of the crimes. Appellant's narrative of his actions in committing the crimes, as paraphrased in Dr. Haskins' report, continues to deny the use of a handgun, or most of the more violent details which were presented through the victims' testimony. Appellant's account of his actions was that he enjoyed refusing to pay prostitutes and forcing them to have sex. Dr. Haskins does observe in her conclusion:
 Of concern is that [appellant] continues to maintain that he did not have or use a weapon, and he insists he did not threaten his victims with death or harm. It is difficult to know how to assess his continued apparent denial despite him being found guilty of these criminal acts at a jury trial and having completed sex offender treatment. [Dr. Haskins' report at 12.]
It is this contradiction between appellant's apparent good adjustment since his conviction and his many other favorable attributes, and his continued denial of the nature, extent, and seriousness of his conduct, which leads us to attribute a higher risk of reoffense to appellant than that found by Dr. Haskins. While Dr. Haskins attributes appellant's crimes to a period of depression and personal dislocation brought on by appellant's denial of reenlistment into the Navy, certain methodical aspects of preparation and execution of his abductions present traits which do not augur well for appellant's ability to refrain from reoffending. The trial court at appellant's sexual predator hearing was entitled to rely on the nature of the objects, including handcuffs, a knife, a ski mask, and badge, found in appellant's truck at the time of his arrest in concluding that appellant's criminal conduct was more calculated than opportunistic. Further bolstering this theory, the prosecution at trial was able to present evidence, through credit card records, of appellant's almost nightly fuel purchases which corroborated the prosecution's theory, based upon reports from the North High Street area prostitutes, that appellant was prowling the area looking for victims to abduct.
Because appellant continues, even now, to characterize his conduct as merely involving a refusal to pay prostitutes, rather than gunpoint abduction and rape, the conclusion that appellant successfully confronted the consequences of his past behavior and accordingly prepared himself to prevent reoccurrence of such conduct is fundamentally suspect. Applying these observations, as the trial court did, to the enumerated factors in R.C. 2950.09, it can be concluded that appellant's crimes were part of a demonstrated pattern of abuse involving multiple victims which substantiates the trial court's assessment that appellant was likely to reoffend and should be classified a sexual predator.
We accordingly find that, pursuant to Thompkins, there was sufficient evidence to support the trial court's conclusion that the prosecution had met its burden, by clear and convincing evidence that appellant was likely to reoffend, and that after a limited weighing of the evidence, there is sufficient, competent, credible evidence to permit reasonable minds to find such a probability. Appellant's assignment of error is accordingly overruled, and the judgment of the Franklin County Court of Common Pleas determining that appellant should be classified as a sexual predator is affirmed.
BOWMAN and LAZARUS, JJ., concur.