[Cite as *State v. Parks*, 2026-Ohio-903.]

COURT OF APPEALS
ASHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| STATE OF OHIO, | Case No. 25-COA-011 |
| Plaintiff - Appellee | <u>Opinion And Judgment Entry</u> |
| -vs- | Appeal from the Ashland County Court of Common Pleas, Case No. 24-CRI-157 |
| APRIL PARKS, | Judgment:   Affirmed |
| Defendant - Appellant | Date of Judgment Entry: March 18, 2026 |

**BEFORE:** Craig R. Baldwin; Robert G. Montgomery; Kevin W. Popham, Judges

**APPEARANCES:** CHRISTOPHER R. TUNNELL, for Plaintiff-Appellee; BRIAN A. SMITH, for Defendant-Appellant.

*Montgomery, J.*

{¶1}   Defendant/Appellant April Parks ("Appellant") appeals the trial court's decision that found she did not prove the affirmative defense of Not Guilty by Reason of Insanity ("NGRI") by a preponderance of evidence. We affirm the decision of the trial court.

**STATEMENT OF THE FACTS AND THE CASE**

{¶2}   Appellant is the owner of a business that sells animals. One of Appellant's cats scratched her, and she killed it by stabbing it in the head with a butcher knife. After stabbing the cat, Appellant drove to her children's school to pick them up. Appellant became upset with the boys and ordered them out of her car, stranding them. The boys

contacted their grandmother, Beth Jones, and she picked them up and brought them home. When Ms. Jones and the boys entered Appellant's home, they discovered a dead cat on the kitchen counter and Appellant acting erratically. Ms. Jones called the Ashland County Sheriff's Office and Deputies Asa Derry and Angie Hamilton responded to the call.

{¶3} The deputies executed a wellness check on Appellant and found her outside smoking a cigarette and watching her dogs exercise in the yard. The deputies noticed that Appellant had fresh scratches on her arm. Appellant told deputies that her dogs and the cat had gotten into a fight and when she tried to break it up, the cat scratched her. Appellant did not tell the deputies that she killed the cat.

{¶4} The deputies spoke with Ms. Jones and planned for Appellant to leave the premises in an effort to defuse the situation. It was agreed upon between the deputies and Ms. Jones that Appellant was competent to drive. However, before Appellant could leave the residence, one of the boys informed the deputies that Appellant had killed the house cat by stabbing it in its mouth. The deputies found the cat on the kitchen counter underneath bloody towels with a large knife down its throat.

{¶5} The deputies decided that they were no longer dealing with a wellness check and that a crime may have been committed. The deputies contacted Captain Sims and he came to the home.

{¶6} Before the deputies could question Appellant regarding the death of the cat, she locked herself in a room for over 15 minutes. While locked in the room, Appellant was heard screaming and chanting. Deputies attempted to coax Appellant from the room but when those efforts were unsuccessful, a deputy kicked in the door. Appellant was found sitting on a bed. The deputies handcuffed Appellant and placed her in the back of their cruiser.

{¶7} While in the cruiser, Appellant told Captain Sims that she flipped out and killed the cat.

{¶8} Appellant was indicted on one count of Cruelty to Companion Animals in violation of R.C. 959.131(C), 959.99(E)(2).

{¶9} Appellant waived her right to a jury trial and the trial court found her guilty of the sole count contained in the indictment on April 9, 2025. *Judgment Entry Rendering Verdict.*

{¶10} The trial court held a sentencing hearing on May 5, 2025, wherein Appellant was sentenced to twelve (12) months in a penal institution and court costs. *Judgment Entry-Sentencing.*

{¶11} Appellant filed a timely appeal and asserts the following assignment of error:

{¶12} "I. APPELLANT'S CONVICTION FOR CRUELTY TO COMPANION ANIMALS WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

## STANDARD OF REVIEW

{¶13} In determining whether a verdict is against the manifest weight of the evidence, this Court acts as a thirteenth juror and "in reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses, and determines whether in resolving conflicts in evidence the jury 'clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *State v. Thompkins,* 78 Ohio St.3d 380, 387 (1997*).* This Court should only grant a new trial, "[i]n the exceptional case in which the evidence weighs heavily against the conviction." *State v. Willet*, 2022-Ohio-3115, ¶8 (5th Dist.).

**{¶14}** "In weighing the evidence, the court of appeals must always be mindful of the presumption in favor of the finder of fact." *State v. Butler*, 2024-Ohio-4651, ¶ 75 (5th Dist.). "[A]n appellate court will leave the issues of weight and credibility of the evidence to the factfinder, as long as a rational basis exists in the record for its decision." *State v. Sheppard*, 2025-Ohio-161, ¶ 66 (5th Dist.).

## ANALYSIS

**{¶15}** Appellant asserts that she is not guilty by reason of insanity and the trial court's finding of guilt was against the manifest weight of evidence. We disagree.

**{¶16}** Appellant was charged with Cruelty to Companion Animals in violation of R.C. 959.131(C) which states, "No person shall knowingly cause serious physical harm to a companion animal." A "companion animal" is defined as, "any animal that is kept inside a residential dwelling and any dog or cat regardless of where it is kept, including a pet store as defined in section 956.01 of the Revised Code. "Companion animal" does not include livestock or any wild animal." R.C. 959.131(A)(1). R.C. 959.99(E)(2) states, "Whoever violates division (C) of section 959.131 of the Revised Code is guilty of a felony of the fifth degree."

**{¶17}** It is not disputed that the State proved that Appellant caused serious physical harm to a companion animal when she stabbed the cat with a knife. Appellant argues that at the time she committed the act, she did not know, as a result of a severe mental disease or defect, the wrongfulness of her acts. *Appellant Brief*, p. 7.

## Not Guilty by Reason of Insanity Defense

**{¶18}** Not guilty by reason of insanity ("NGRI") is an affirmative defense codified in R.C. 2901.01(A)(14) which states, "A person is 'not guilty by reason of insanity' relative to a charge of an offense only if the person proves, in the manner specified in section 2901.05 of the Revised Code, that at the time of the commission of the offense, the person did not know, as a result of a severe mental disease or defect, the wrongfulness of the person's acts."

**{¶19}** Insanity is an affirmative defense that must be proved by the defendant by a preponderance of the evidence. *State v. McConnell*, 2021-Ohio-41, ¶ 21 (5th Dist.), citing *State v. Eick*, 2011-Ohio-1498, ¶ 29 (5th Dist.). Preponderance of evidence has been defined by this Court as, "[t]he greater weight of the evidence, evidence that is more probable, more persuasive and of greater probative value." *State v. Tirado*, 2015-Ohio-5512, ¶ 12 (5th Dist.), citing *State v. Williams*, 2002-Ohio-4267, ¶ 13 (5th Dist.)

**{¶20}** The Ohio Supreme Court set out the test of insanity in stating, "In order to establish the defense of insanity, the accused must establish by a preponderance of the evidence that disease or other defect of his mind had so impaired his reason that, at the time of the criminal act with which he is charged, either he did not know that such act was wrong or he did not have the ability to refrain from doing that act." *State v. Curry*, 45 Ohio St.3d 109, 112 (1989) citing *State v. Staten*, 18 Ohio St.2d 13, 21 (1969).

## Evidence Presented at Trial

**{¶21}** In the case at hand, Appellant was evaluated by Dr. Shannon Porter who is an expert in forensic psychology. Dr. Porter met with Appellant for approximately an hour and 40 minutes, reviewed bodycam videos and records from Ashland County Sheriff's

office and completed an evaluation. Dr. Porter testified that based on the collateral data she reviewed and Appellant's self-reporting that "[s]he was experiencing psychotic and mood related symptoms" at the time she killed the cat. *Trial Transcript*, p. 27. Dr. Porter opined that Appellant "[h]ad a severe mental disease that resulted in her not knowing the wrongfulness of her acts." *Id.*, p. 32. However, Dr. Porter also agreed that, "[r]easonable minds could conclude that the Defendant did know the wrongfulness of her actions." *Id.*, pp. 61, 62. Dr. Porter also testified that, "Appellant's mood and symptoms appear normal" prior to law enforcement finding out about the dead cat. *Id.*, p. 44.

{¶22} The State did not present its own expert to rebut Appellant's NGRI defense. Appellant argues that, "The lack of expert testimony presented by the State --- particularly to contradict or otherwise dispute Dr. Porter's conclusion regarding Parks' mental state and knowledge of wrongfulness at the time of the offense --- further demonstrates that the trial court's conviction of Parks was against the manifest weight of the evidence and should be reversed by this Court." *Appellant Brief*, p. 8.

{¶23} The State was not required to present expert testimony. The Ohio Supreme Court has stated that a trial court is not required to automatically accept an expert's opinion. "Expert testimony, even when uncontradicted, is not necessarily conclusive." *State v. Dickerson*, 45 Ohio St.3d 206, 210-211 (1989). "Nevertheless, expert opinion 'may not be *arbitrarily* ignored, and some reason must be objectively present for ignoring expert opinion testimony.'" *State v. White*, 2008-Ohio-1623, ¶ 71, citing *United States v. Hall*, 583 F.2d 1288, 1294 (C.A.5, 1978).

{¶24} The State called two of the three officers who were present on the day in question in support of their case.

**{¶25}** Seargent Hamilton testified that Appellant stated, "She was angry at the cat when she went to exercise her dogs, the cat got out of the house and started fighting with the dogs and she originally tried to help the cat and then at some point killed the cat." *Trial Transcript*, p. 92. Officer Hamilton also testified that Appellant appeared calm when deputies kicked in the door. *Id.*, p. 114.

**{¶26}** Captain Sims testified that after Appellant was placed in a police cruiser, she was able to convey the events of the day to him. *Id.*, p. 147. Captain Sims further testified that Appellant told him, "[t]he cat scratched her when was trying to get it apart from the dogs and that made her mad so she killed the cat." *Id.*, p. 152.

Trial Court Findings and Decision

**{¶27}** The trial court reviewed Dr. Porter's report and heard her testimony regarding Appellant's mental state. The trial court made numerous findings regarding Dr. Porter's report. The trial court found, "[t]he court would note that even Dr. Porter's report casts at least some doubt on that and reading from the report it says in the summary, there is evidence on both sides of the issue ...." *Further Hearing Transcript*, p. 11. The trial court found Dr. Porter's finding regarding Appellant's confusion was not supported by the video footage. *Id.*, p. 21. The trial judge specifically found, "There was nothing in the body camera footage that indicated to me that the dishonesty or misleading statements of [about] the cat was done out of confusion." *Id.*, p. 22.

**{¶28}** The trial court disagreed with Dr. Porter's finding that there was no criminal motivation. The trial judge found that Appellant's statement that, "[t]he cat attacked me obviously, so I flipped out and I killed the cat, I am sorry," is proof that there was criminal motivation for the offense charged. *Id.*, p. 15.

{¶29} The trial judge did not ignore Dr. Porter's expert opinion and stated that he was not substituting his medical opinion for that of Dr. Porter's. *Id.*, p. 23.

{¶30} The trial judge weighed the facts that were presented at trial against the findings made by Dr. Porter and found that Appellant failed to prove beyond a reasonable doubt that at the time of the offense, she did not know as a result of the severe mental disease or affect the wrongfulness of the act. *Id.*, p. 24.

{¶31} The trial court considered Appellant's insanity defense. It is reasonable to find that Appellant did not prove her NGRI insanity defense by a preponderance of evidence. We find that the trial court's decision is not against the manifest weight of evidence and Appellant's sole assignment of error is overruled.

## CONCLUSION

{¶32} For the reasons stated in our accompanying Opinion, the judgment of the Ashland County Court of Common Pleas is Affirmed.

{¶33} Costs to Appellant.

By: Montgomery, J.
Baldwin, P.J. and
Popham, J. concur.