THE STATE OF OHIO, APPELLEE, *v.* HOLLOWAY, APPELLANT.

[Cite as State *v.* Holloway (1988), 38 Ohio St. 3d 239.]

(No. 86-1597—Submitted May 3, 1988—Decided August 24, 1988.)

240

*Arthur M. Ney, Jr.,* prosecuting attorney, *Paul R. Markgraf, William E. Breyer* and *Theodore Froncek, Jr.,* for appellee.

*John K. Issenmann* and *Jeffrey R. Lewis,* for appellant.

MOYER, C.J. This appeal presents us with six propositions of law asserting various errors in the penalty phase of the trial and appellate court proceedings.

## I
## A

Holloway first asserts that his premature release from prison precipitated his violent behavior. He submits that the trial court failed to properly consider his early release as a mitigating factor in sentencing, rendering this sentencing constitutionally deficient under *Lockett v. Ohio* (1978), 438 U.S. 586, applied in *State v. Jenkins* (1984), 15 Ohio St. 3d 164, at 189, 15 OBR 311, at 332-333, 473 N.E. 2d 264, at 288-289, and flawed in light of statutory requirements of R.C. 2929.04(B). We disagree.

The Eighth and Fourteenth Amendments to the United States Constitution require the sentencing authority in capital cases to be not precluded from considering, as a mitigating factor, the defendant's character and record, and the circumstances of the particular offense. *Lockett v. Ohio, supra.*

The first paragraph of R.C. 2929.04(B) mandates consideration of evidence of an offender's history, character, and background in mitigation, and R.C. 2929.04(B)(7) also permits consideration of "[a]ny other factors that are relevant to the issue of whether the offender should be sentenced to death."

Our review of the trial court's opinion reveals that the fact of Holloway's release on parole was considered by the trial court in mitigation consistent with the constitutional and statutory requirements of *Lockett v. Ohio, supra,* and R.C. 2929.04(B). We find no error in the trial court's determination that defendant's release was irrelevant as a mitigating factor. When found not mitigating, a factor may be given little or no weight against the aggravating circumstances. *State v. Stumpf* (1987), 32 Ohio St. 3d 95, 512 N.E. 2d 598, paragraph two of the syllabus; *State v. Steffen* (1987), 31 Ohio St. 3d 111, 31 OBR 273, 509 N.E. 2d 383.

## B

Defendant next contends that because the trial judge considered a definition of mitigating factors different from the definition considered by the jury, defendant was prejudiced and deserves a new sentencing hearing. We find the error harmless for the reasons set forth below.

At the penalty phase, the trial court properly instructed the jury to consider all the relevant testimony and exhibits in both the guilt and penalty phases, the arguments of counsel, and all other information relevant to the aggravating circumstances and mitigating factors. The court then recited the statutory mitigating factors defined in R.C. 2929.04(B).[1]

After the jury rendered its recommendation of the sentence of death,

---

[1] R.C. 2929.04(B) states, in pertinent part, and the trial court charged the jury to consider and weigh against the aggravating circumstances:

"* * * [T]he nature and circumstances of the offense, the history, character, and background of the offender, and all of the following factors:

"(1) Whether the victim of the offense induced or facilitated it;

"(2) Whether it is unlikely that the offense would have been committed, but for the fact that the offender was under duress, coercion, or strong provocation;

"(3) Whether, at the time of committing the offense, the offender, because of a

the court issued a written opinion that set forth its reasons for adopting the jury's recommendation. The court stated its belief that "* * * a mitigating factor is a circumstance or fact that would tend in some way to reduce the offender's culpability for the offense he committed." The court quoted the statutory factors of R.C. 2929.04(B) and then noted, "[i]n considering the nature and circumstances of the offense there is absolutely no evidence which would mitigate or somehow reduce the defendant's culpability."

Contrary to the trial court's opinion, mitigating factors under R.C. 2929.04(B) are not related to a defendant's culpability but, rather, are those factors that are relevant to the issue of whether an offender convicted under R.C. 2903.01 should be sentenced to death. See, e.g., R.C. 2929.04(B)(7). The weighing of aggravating circumstances against mitigating factors "* * * is designed to guide the sentencing authority's discretion by focusing on the 'circumstances of the capital offense and the individual offender * * *,' thus reducing the arbitrary and capricious imposition of death sentences. State v. Jenkins (1984), 15 Ohio St. 3d 164, 173, 15 OBR 311, 319, 473 N.E. 2d 264, 277." State v. Penix (1987), 32 Ohio St. 3d 369, 371, 513 N.E. 2d 744, 746-747. The resulting individualized sentencing decisions are essential in capital cases to ensure the reliability of the determination that

death is the appropriate punishment. Lockett v. Ohio, supra, at 602-605.

The record clearly indicates that the trial court correctly advised the jury of what mitigating factors it was to consider. Given that the jury was properly instructed, reversal is not mandated. The trial court's written opinion clearly indicates that although it fully considered the defendant's evidence in light of each factor listed in R.C. 2929.04(B), it applied a definition of mitigating factors that may have affected its review of the mitigating evidence. We reject, however, Holloway's contention that the deviation is prejudicial error.

In our view, the appellate review process of R.C. 2929.05 was intended, and has functioned in this case, to cure error in the trial judge's sentencing decision. Cf. State v. Jenkins, supra, paragraph five of the syllabus. The court of appeals, upon proper independent review, found nothing of sufficient weight to mitigate the imposition of the death sentence. Our independent review follows in Part II of this opinion.

Therefore, we find the trial judge's definition of mitigating factors to be harmless error.

C

The court of appeals reversed defendant's conviction of the second count of aggravated murder while committing an aggravated burglary, finding that there was insufficient evi-

---

mental disease or defect, lacked substantial capacity to appreciate the criminality of his conduct or to conform his conduct to the requirements of the law;

"(4) The youth of the offender;

"(5) The offender's lack of a significant history of prior criminal convictions and delinquency adjudications;

"(6) If the offender was a participant

in the offense but not the principal offender, the degree of the offender's participation in the offense and the degree of the offender's participation in the acts that led to the death of the victim;

"(7) Any other factors that are relevant to the issue of whether the offender should be sentenced to death."

dence to prove two of the elements of aggravated burglary beyond a reasonable doubt. We hold that the court of appeals erred in reversing the defendant's conviction on the second count.

Ohio's aggravated burglary statute is set out in R.C. 2911.11, and provides, in pertinent part:

"(A) No person, by force, stealth, or deception, shall trespass in an occupied structure, as defined in section 2909.01 of the Revised Code, * * * with purpose to commit therein any theft offense, * * * or any felony, when any of the following apply:

"(1) The offender inflicts, or attempts or threatens to inflict physical harm on another; * * *

"* * *

"(3) The occupied structure involved is the permanent or temporary habitation of any person, in which at the time any person is present or likely to be present."

The court of appeals held that the evidence failed to show: (1) that the defendant, who gained entry to the victim's home by consent, entered by force, stealth, or deception, as required by statute; and (2) that defendant entered Wilson's home with the intent to commit a theft offense or felony. The court, therefore, acquitted the defendant of count two.

This court held in State v. Steffen, supra, that a defendant who initially gains entry to one's home by consent may subsequently become a trespasser if consent is withdrawn. We further held that a jury could justifiably infer from the facts that a victim terminated the accused's privilege to remain after commencement of an assault.

In the case at bar, there is no dispute that Holloway gained entry to the victim's home by consent. It is also not disputed that Holloway subsequently assaulted and murdered the victim. As in Steffen, the jury could justifiably infer that the victim withdrew consent when Holloway commenced the assault and thus trespassed by use of force.

With respect to the second element, we find that there was sufficient evidence in the record for the jury to determine whether Holloway intended to commit a theft offense or felony while committing the trespass. There was testimony presented that Holloway asked the victim for money; and, when she refused, he brutally assaulted and killed her. He ultimately took a radio from the home.

Accordingly, the court of appeals erred by reversing the aggravated burglary charge and, to that extent, we reverse the decision of the court of appeals and reinstate defendant's conviction on count two.

Defendant also infers that the jury instructions in the sentencing phase improperly included as an aggravating circumstance the charge that defendant was the "principal offender" in the commission of murder. The Revised Code clearly does not list principal offender as an aggravating circumstance. If this charge were, in fact, included as an aggravating circumstance, defendant must be resentenced pursuant to R.C. 2929.06.

Although the jury instructions are less than a model of clarity, they clearly did not instruct the jury to consider as an aggravating circumstance the fact that Holloway was the principal offender in the commission of murder. While the jury instructions note that Holloway was the principal offender, they merely reflect the statutory definition of aggravating circumstances under R.C. 2929.04(A)(7) in a manner which is merely descriptive. We consider any error arising thereby to be

harmless. Thus, we reject defendant's arguments on this issue.[2]

### D

Holloway next contends that he was denied effective assistance of counsel when his trial counsel failed to request a clarification of jury instructions given in the penalty phase of his trial. Holloway alleges that the trial court failed to clearly instruct the jury that it must separately weigh the aggravating circumstance of each count against the mitigating factors. He contends that the instructions caused the jury to collectively weigh both the aggravating circumstances against the mitigating factors.

The claim of ineffective assistance of counsel, while raised below with respect to other matters, did not include defense counsel's failure to seek such clarification of the jury instructions. Instead, error regarding the jury instructions was raised by defendant in the context of a separate assignment of error on appeal. The court of appeals found defendant's failure to object to the jury instruction at trial waived any error, relying on *State* v. *Williams* (1977), 51 Ohio St. 2d 112, 5 O.O. 3d 98, 364 N.E. 2d 1364; *State* v. *Underwood* (1983), 3 Ohio St. 3d 12, 3 OBR 360, 444 N.E. 2d 1332. We will, nonetheless, consider defendant's claim that his counsel's failure to object to the jury instructions constitutes ineffective assistance of counsel.

The failure to object to error, alone, is not enough to sustain a claim of ineffective assistance of counsel. To prevail on such a claim, a defendant must first show that there was a substantial violation of any of defense counsel's essential duties to his client and, second, that he was materially prejudiced by counsel's ineffectiveness. *State* v. *Lytle* (1976), 48 Ohio St. 2d 391, 396-397, 2 O.O. 3d 495, 498, 358 N.E. 2d 623, 627, vacated in part on other grounds (1978), 438 U.S. 910; *Strickland* v. *Washington* (1984), 466 U.S. 668.

Our review of the transcript in its entirety convinces us that the jury understood its duty to separately weigh the aggravating circumstances against the mitigating factors for each count of murder. While the jury instructions in sentencing were less clear than they could have been, the trial court three times clearly and specifically instructed the jury in the guilt phase that there were separate aggravating circumstances associated with each count of murder. Both the instructions in the sentencing phase and the verdict forms clearly indicated to the jurors that they were separately sentencing the defendant on the two counts of aggravated murder. Accordingly, defendant's claim of ineffective assistance of counsel fails.

### E

Holloway next argues that Ohio's capital punishment statute is unconstitutional because it allows reviewing courts to assume the role of the trial judge or jury with respect to the imposition of the death penalty. Although this claim was also not raised on appeal before the court of appeals, we will proceed to consider it as well.

---

[2] We caution the bench and bar, however, against using a defendant's status as principal offender in the conjunctive with aggravating circumstances listed in R.C. 2929.04(B)(7) in any manner that might infer that status as a principal offender is a separate aggravating circumstance. This applies from the initial filing of charges against the defendant, and the language of the indictment, through the charging of the jury by the court.

We find that the independent weighing process at each appellate level required by R.C. 2929.05 does not contravene the role of the jury in the penalty proceeding; rather, the statutory scheme provides a procedural safeguard against the arbitrary imposition of the death penalty. Moreover, three opportunities are provided defendants to argue the appropriateness of a sentence less than death to courts which must decide the question *de novo*. Once the death penalty recommended by a jury is vacated, it may not on remand be reimposed by a jury. *State* v. *Penix, supra,* syllabus.

Accordingly, we hold that the independent appellate review of the sentencing decision in a capital case does not violate either the Ohio or the United States Constitutions.

## II

Holloway's final proposition of law urges this court to find that the aggravating circumstances do not outweigh the mitigating factors beyond a reasonable doubt. The issue raised encompasses our statutory duty to independently weigh aggravating circumstances against mitigating factors. It is to the fulfillment of this duty that we now turn.

We are required by R.C. 2929.05 (A) to determine whether the aggravating circumstances of which the defendant was found guilty outweigh the mitigating factors beyond a reasonable doubt.

## A

Holloway was convicted of two counts of aggravated murder. With respect to the first count, the aggravating circumstance of which Holloway was found guilty is: "* * * that the offense alleged in the first count hereof was committed while the said Allen Earl Holloway was committing the of-

fense of aggravated robbery * * * and * * * that the said Allen Earl Holloway was the principal offender in the commission of the aggravated murder alleged in the first count hereof as specified in Section 2929.04(A)(7) of the Revised Code." With respect to the second count, the aggravating circumstance of which Holloway was found guilty is: "* * * that the offense alleged in the second count hereof was committed while the said Allen Earl Holloway was committing the offense of aggravated burglary * * * and * * * that the said Allen Earl Holloway was the principal offender in the commission of the aggravated murder alleged in the second count hereof as specified in Section 2929.04(A)(7) of the Revised Code."

## B

In support of the countervailing mitigating factors of R.C. 2929.04(B),[3] Holloway presented six witnesses at the penalty phase of the proceeding.

The first two witnesses were his brother, Ernest Edgar Holloway, and his sister, Barbara Conners. They related that the defendant was born physically deformed, with half a nose, a cleft pallet, and a harelip. Defendant was mildly retarded and was teased and called names by members of the family, teachers, friends, and social peers. Other children beat him. The oppression visited upon him by fellow students forced him to return home early from school to avoid beatings. His father beat him daily. They stated that in response to this treatment, Holloway began to hate everyone.

The next two witnesses were clinical psychologists. Dr. William S. Walters and Dr. Roger H. Fisher both examined Holloway by order of the

---

[3] See footnote 1.

court. Both opined that Holloway was mildly retarded, and had an antisocial personality disorder and organic brain damage. Both stated that he was an angry, violent, and impulsive individual and that his personality was shaped by his history of abuse and torment. They expressed their opinions that Holloway was now a very dangerous individual. Dr. Fisher opined that Holloway could not function in society and could not be reformed. Dr. Walters offered that Holloway should not have been released by the authorities. While stating that Holloway lacks substantial capacity to appreciate the criminality of his conduct or to conform his conduct to the requirements of the law, both doctors added that Holloway knew right from wrong and could refrain from engaging in wrongful acts.

The final two witnesses were Leonard Kirschner, assistant prosecuting attorney for Hamilton County, and Raymond E. Capots, chairman of the Parole Board. Kirschner testified regarding his repeated efforts to prevent the early release of Holloway. Capots testified to the reports before the Parole Board at the time of Holloway's release. He further verified that during defendant's most recent five-year incarceration he did not receive any psychological treatment contrary to the recommendation of the trial judge. Finally, Capots stated that, at the time, defendant's release by the Parole Board was not an error — but that in retrospect, it was an error. The state presented no witnesses at the mitigation hearing.

## C

Of the mitigating factors listed in R.C. 2929.04(B), we find that factors (1), (2), and (6) do not apply. In support of factor (3), defendant has presented substantial evidence that due to defendant's volatile personality and mild retardation he lacks substantial capacity to appreciate the criminality of his conduct or to conform his conduct to the requirements of the law. The significance of this evidence is diminished somewhat by the further testimony which indicated the defendant was, nonetheless, able to distinguish right from wrong and refrain from engaging in wrongful acts. However, in conjunction with his mild retardation, the evidence merits careful consideration in mitigation.

With regard to factors (4) and (5), neither the youth of the offender, age twenty-nine at the time of trial, nor the offender's significant history of prior criminal convictions and delinquency adjudications carries any weight in mitigation. *State* v. *Stumpf, supra,* paragraph two of the syllabus; *State* v. *Steffen, supra,* paragraph two of the syllabus.

A major focus of defendant's evidence in mitigation was to support the assertion that Holloway's early release by the Parole Board was a significant factor in mitigation under R.C. 2929.04(B)(7). The defendant argues that because of his personality, the commission of the type of offense he committed was inevitable upon his release.

In our view, evidence that the Parole Board released the defendant prematurely carries little, if any, weight as a mitigating factor under R.C. 2929.04(B)(7) for several reasons. Presumably, at the time defendant was released, the board had a reasonable basis to believe defendant could function in society. Capots testified that the board had before it reports to evidence that, while officially diagnosed in 1976 as a psychopathic offender, Holloway was found to have "improved" after spending time in Lima State Hospital for the criminally insane in 1977. A psychiatric report recommended parole at the time of his

first parole hearing in 1981. A psychological update prior to his actual release in 1984 indicated no change in his condition. Finally, there was information that Holloway was doing well inside prison, had participated in several programs, had not had any real institutional violations, and had above-average work reports. Capots further testified that the Parole Board must have been convinced that Holloway was not a threat to himself or others, otherwise he would not have been released. It is only with the benefit of hindsight that one may second-guess the Parole Board and assert that the defendant was released prematurely. We find Holloway's assertion lacks weight in mitigation.

Consideration of the defendant's history, character, and background reveals that from the beginning of his life, all facets of society have excoriated Holloway for mental deficiencies and birth defects which were beyond his control. The result has been an individual who responded to hateful behavior in full turn with a personality bearing among the darkest aspects of human emotion and behavior.

Despite the apparent mitigating value of this personal history which, according to psychologists, also caused defendant to lack substantial capacity to appreciate the criminality of his conduct or conform his conduct to the requirements of the law, we find defendant's history of being abused and tormented merely serves, in the main, to explain his character development. We reach this conclusion because, despite all, defendant demonstrated by his actions, and in the opinion of experts Fisher and Walters, that he was able to distinguish between right and wrong.

Finally, we find nothing of mitigating value in the nature and circumstances of the offenses against Wilson.

Separately weighing the aggravating circumstances of each count of aggravated murder against the factors found to be of mitigating value, we find with respect to count one that the aggravating circumstance outweighs the mitigating factors beyond a reasonable doubt and uphold the sentence of death.

With respect to count two, we find that the aggravating circumstance outweighs the mitigating factor beyond a reasonable doubt and, accordingly, we uphold the sentence of death as to count two. Defendant's final proposition of law is overruled.

### III

We turn now to our final responsibility and review the proportionality of this death sentence in light of other capital cases which have been reviewed by this court. Comparison with those other cases leads us to conclude that the sentence of death with respect to either count is neither excessive, disproportionate, nor inappropriate.

The death sentence has been upheld in numerous cases involving aggravated robbery specifications: *State v. Beuke* (1988), 38 Ohio St. 3d 29, 526 N.E. 2d 274, and cases cited; and in cases involving aggravated burglary specifications; *State v. Poindexter* (1988), 36 Ohio St. 3d 1, 520 N.E. 2d 568 (aggravated burglary and course-of-conduct specifications); *State v. Apanovitch* (1987), 33 Ohio St. 3d 19, 514 N.E. 2d 394 (aggravated burglary and rape specifications); *State v. Steffen, supra* (aggravated burglary and rape specifications); *State v. Barnes* (1986), 25 Ohio St. 3d 203, 25 OBR 266, 495 N.E. 2d 922 (aggravated burglary and aggravated robbery specifications).

The judgment of the court of appeals is affirmed in part and reversed in part. The conviction and sentence of death on count two is reinstated, and

the conviction and sentence of death on count one is affirmed.

*Judgment affirmed in part and reversed in part.*

SWEENEY, LOCHER, DOUGLAS, WRIGHT and H. BROWN, JJ., concur.

HOLMES, J., concurs separately.

DOUGLAS, J., concurring. I find the trial court's weighing to have been entirely proper. Of course, the R.C. 2929.04(B) mitigating factors do not relate to a defendant's criminal culpability. They relate to reducing a defendant's *moral* culpability for the crime committed or in some other way diminish the appropriateness of death as a penalty. See *State* v. *Steffen* (1987), 31 Ohio St. 3d 111, 129, 31 OBR 273, 289, 509 N.E. 2d 383, 399. This is what the trial judge in his written opinion was saying. Maybe he could have expressed himself a little more precisely — but couldn't we all!

HOLMES, J., concurring. I concur in both the syllabus and judgment and, in the main, with the total opinion. I write solely to reference my disagreement with *State* v. *Penix* (1987), 32 Ohio St. 3d 369, 513 N.E. 2d 744, which is cited with approval by the majority herein.