JOURNAL ENTRY AND OPINION
{¶ 1} Defendant-appellant, Charles Howard ("defendant"), raises three assignments of error concerning his jury trial that resulted in numerous convictions, including grand theft motor vehicle, theft of pension checks, and several counts of forgery and uttering. The trial court sentenced defendant to a period of probation to make restitution to the victim and some hours of community service, which defendant does not appeal. For the reasons that follow, we affirm.
 {¶ 2} Despite the voluminous record, the operative facts are relatively straightforward. Defendant resided with his father, James, in Oakwood Village, where James had lived for 60 years. The home had transferred title over the years and at the time of trial was in defendant's name. In February 2004, James fell and broke his hip requiring him to be in a nursing home to recover. By the time of trial, James was 94 years old.
 {¶ 3} Defendant cared for and visited James at the nursing home. James also had fathered numerous other children with various women, including a woman named Mary Day. Mary had moved to Virginia when she was two years old and never saw James again until 2004. James also developed a fatherly relationship with a woman named Eleanor Penn who was not his biological child but was instead the daughter of a long-time girlfriend.
 {¶ 4} Defendant claimed that James executed a Power of Attorney appointing defendant his attorney-in-fact to make decisions over his financial affairs and authorizing him to act on his behalf. State's Exhibit 1 is a three-page Power of Attorney, executed by James Howard on the third page and witnessed by defendant and Eleanor Penn on March 10, 2004. Both James and Eleanor recalled defendant bringing in a half-sheet of paper requesting their signatures allegedly to secure James' release from the nursing home. Both, however, denied any knowledge of executing a Power of Attorney.
 {¶ 5} Upon release from the nursing home, James returned to the Oakwood Village home with defendant. At this point, James discovered that his car was missing from the driveway and was told that defendant had given it away to a relative. Defendant maintains James told him to do so but James denied this.
Although James continued to convalesce in his home, he required constant care. Defendant, who worked at night, made arrangements to have Eleanor stay with James. While defendant testified that he paid Eleanor $200 a week, she denied receiving any payment.
 {¶ 6} According to James, defendant was handling all of the finances and had his checkbook because he gave it to him. Nonetheless, James stated that he did not give defendant permission to write checks on his account. James also states he did not give defendant permission to take any money out of his account.
 {¶ 7} James would receive monthly pension checks but did not see them or any mail following his return home from the nursing home.
 {¶ 8} In June 2004, Mary Day returned to Cleveland to visit James. In a reported effort to establish a relationship with James, Mary claimed to make visits every couple of weeks. During a weekend that defendant was out of town, Mary and Eleanor took James to his bank. When James discovered a depleted account, the group proceeded to the police station. At least one witness said the police thought they should go into defendant's bedroom.
 {¶ 9} Both women stated that James wanted them to enter defendant's locked room. Both believed they were not breaking in because it was James' house and he wanted them to go into the room. The women described the room as being covered in bills and foreclosure notices. They also made passing references to observing sex paraphernalia inside the room. That day, James decided to move to Virginia and live with Mary.
 {¶ 10} An investigation revealed that defendant endorsed numerous checks from his father's account to himself. However, the evidence also established that defendant had made payments from the account for medical services rendered to his father. Defendant also had purchased new furniture in an effort to accommodate his father's condition. Defendant stated that the money from his father's account was spent on expenses attendant to caring for his father.
 {¶ 11} At trial, defendant adamantly maintained that his father knowingly executed the Power of Attorney, and told him to give away the car. Other defense witnesses said James told defendant to give away the car. James said he did not.
 {¶ 12} Detective John Freeman of the Oakwood police department testified of his involvement with the investigation. He recounted that Mary, Eleanor, and James came to the police station in June 2004 complaining that defendant stole from James. Thereafter, Mary and a lawyer contacted him frequently inquiring about the matter and were adamant about charges being filed. There is nothing in Detective Freeman's testimony reflecting any encouragement on his part to prompt Mary and Eleanor to enter and/or search defendant's bedroom.
 {¶ 13} Following the close of evidence, the jury returned not guilty verdicts on two counts of theft and one count of misuse of credit cards, but found defendant guilty of the remaining 13 charges. Defendant requested a bond pending sentencing that the trial court granted due to the victim's wish not to have his son in jail. Further, defendant emphasized his release would allow him to return to work and enable him to more readily satisfy his father's desire for restitution. Again, at sentencing, the State and the trial court articulated the victim's desire not to imprison his son but to obtain restitution. Defendant agreed to make restitution to his father and agreed to the amount and payment schedule. In lieu of jail and largely due to the largess of the 94-year-old victim, the court, inter alia, suspended the prison sentence and imposed probation to be terminated upon payment in full of the restitution order.
 {¶ 14} Defendant's appeal raises three assignments of error that we will address in the order they were presented for our review.
 {¶ 15} "I. Mr. Howard received the ineffective assistance of counsel in violation of the Sixth and Fourteenth Amendments to the United States Constitution."
 {¶ 16} In order for this Court to reverse a conviction on the grounds of ineffective assistance of counsel, we must find that (1) counsel's performance was deficient and (2) that the deficient performance prejudiced the defense so as to deprive the defendant of a fair trial.Strickland v. Washington (1984), 466 U.S. 668, 687. Counsel's performance is deficient if it falls below an objective standard of reasonable representation. State v. Bradley (1989), 42 Ohio St.3d 136, paragraph two of the syllabus. To establish prejudice, "the defendant must prove that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different." Id. at paragraph three of the syllabus.
 {¶ 17} Here, defendant argues that his trial counsel performed deficiently in three respects: (1) by not pursuing a motion to suppress; (2) by not objecting to hearsay; and (3) by not objecting to inadmissible character evidence.
Suppression Motion
 {¶ 18} During trial, Eleanor Penn stated she, along with Mary Day and James Howard, searched the defendant's bedroom after a visit to the police station. Eleanor stated that the police said she had to get into that room. Defendant concedes that defense counsel might not have been aware of this aspect of Eleanor's testimony prior to trial.
 {¶ 19} Eleanor also stated, however, that she entered the room at James' direction. Mary corroborated this fact.
 {¶ 20} Upon review of the record and law, defendant's contention that trial counsel was ineffective for not asserting a suppression motion mid-trial did not constitute ineffective assistance of counsel.
 {¶ 21} Defendant relies on the authority of United States v.Lambert (C.A. 6, 1985), 771 F.2d 83 and Coolidge v. New Hampshire
(1971), 403 U.S. 443. The United States Supreme Court reasoned inLambert as follows:
 {¶ 22} "[T]he Fourth Amendment proscribes only governmental action and does not apply to a search or seizure, even an unreasonable one, conducted by a private individual not acting as an agent of the government or with the participation or knowledge of any governmental official. United States v. Jacobsen, 466 U.S. 109 (1984);Coolidge v. New Hampshire, 403 U.S. 443, 487 (1971). We must, therefore, determine whether [private person] was acting as an agent for the government when she took the inculpatory evidence from the [defendant's] residence.
 {¶ 23} "A person will not be acting as a police agent merely because there was some antecedent contact between that person and the police.United States v. Coleman, 628 F.2d at 965. Rather, two facts must be shown. First, the police must have instigated, encouraged or participated in the search. Id. Second, the individual must have engaged in the search with the intent of assisting the police in their investigative efforts. United States v. Howard, 752 F.2d 220, 227 (6th Cir. 1985)." Lambert, 771 F.2d at 89.
 {¶ 24} In Lambert, the court determined there was no Fourth Amendment violation where the evidence was lacking that the FBI instigated, encouraged, or participated in the search that was performed by a private citizen.
 {¶ 25} In this case, there is a similar lack of evidence that the police instigated, encouraged, or participated in Eleanor Penn and Mary Day's search of defendant's bedroom. Defendant does not cite, nor could we find, any evidence of police instigation or encouragement in Detective Freeman's testimony. Further, both women testified that they entered the defendant's bedroom at James' insistence.
 {¶ 26} Additionally, there is no indication that any of defendant's convictions were based upon any evidence "seized" from defendant's bedroom. Accordingly, he has not demonstrated how the failure to suppress evidence unfairly prejudiced him or deprived him of a fair trial. Consequently, the claim of ineffective assistance of counsel concerning the suppression issue cannot be sustained.
Hearsay/Other Acts Evidence
 {¶ 27} Next, defendant asserts his trial counsel provided ineffective assistance when he did not object to "evidence of pornography." Presumably, defendant is referring to the testimony of Mary Day and Eleanor Penn that upon entering defendant's bedroom they saw "various sexual materials" and "perverted stuff, like sex fiend or something * * *."
 {¶ 28} Contrary to defendant's belief, defense counsel did object when the testimony was first elicited on the direct examination of Eleanor Penn. The trial court overruled the objection. Repeated objection would arguably serve only to highlight the testimony before the jury. And, defense counsel made efforts to discredit it through the testimony of defendant's wife. Counsel's performance was not deficient in this regard.
Hearsay Evidence
 {¶ 29} Lastly, defendant argues that his attorney's performance fell below the standard because he did not object to testimony that he secluded his father, that the telephone was inoperative and that a doctor told Eleanor that James was sharp mentally. Defendant refers us to pages 178, 201-205, 210 and 212 of the transcript. All are included in the testimony of Eleanor Penn.
 {¶ 30} At page 178, Penn testified about defendant living with James in 1992 or 1993 and that she kept in contact with him a couple of days a week. Penn later testified at pages 201-205 about her interactions with James when she would watch him in the evenings, including that the phone did not work. Her testimony on page 210 included reporting statements about James' competency that were allegedly made by some unidentified person at the nursing home. Finally, Penn testified at page 212 that defendant sent Mary away when she attempted to visit James in Garfield Heights.
 {¶ 31} "[T]he failure to make objections is not alone enough to sustain a claim of ineffective assistance of counsel." State v.Conway, 109 Ohio St.3d 412, 430, 2006-Ohio-2815, citing State v.Holloway (1988), 38 Ohio St.3d 239, 244; State v. Gumm (1995),73 Ohio St.3d 413, 428.
 {¶ 32} "Hearsay is an out-of-court statement made by the declarant offered in evidence to prove the truth of the matter asserted. Evid.R. 801(C)." Id.
 {¶ 33} It appears that much of the testimony was not hearsay, i.e., being offered to prove the truth of the matters asserted. In any case, the failure to object to these isolated and stray comments did not rise to the level of ineffective assistance of counsel. Further, the record contains other evidence that the phone was not working and people had difficulty getting to see defendant. Any comments concerning the victim's competency would be overridden by the fact he testified at trial, which enabled the jurors to make their own assessment of his mental capacities.
 {¶ 34} Defendant characterizes the above-quoted testimony as portraying him to be a "mean and plotting caregiver who purposely secluded his father in order to obtain his father's money." Despite defendant's interpretation of the evidence, he has not shown that counsel's failure to object affected the outcome of the trial. Accord,Conway, supra.
 {¶ 35} Assignment of Error I is overruled.
 {¶ 36} "II. The trial court committed plain error by the admission of unconstitutionally obtained evidence, improper character evidence, and inadmissible hearsay."
 {¶ 37} Defendant reiterates his challenge to the evidence at issue in Assignment of Error I under the plain error standard.
 {¶ 38} The standard for plain error is "but for the error, the outcome of the trial clearly would have been otherwise." State v. McKee (2001),91 Ohio St.3d 292, 294; State v. Johnson, 88 Ohio St.3d 95,2000-Ohio-276. Defendant has not established that the outcome of the trial would have been different if the complained of evidence was excluded. In summary, none of defendant's convictions resulted from evidence taken out of his bedroom. Specifically, he was convicted of grand theft of the car, theft of the pension checks, and theft of checks he endorsed to himself from his father's checkbook.
 {¶ 39} It is far from clear that the jury would have acquitted defendant of all charges had they not heard isolated comments about sex paraphernalia and Penn's testimony about the inoperative phone, Mary's inability to see James on one occasion, and an unidentified person's comments about James' competency during his stay at the nursing home.
 {¶ 40} Assignment of Error II is overruled.
 {¶ 41} "III. The trial court erred in ordering restitution for the monies involved in the forgery and uttering counts of conviction because the jury did not find that the alleged victim was defrauded of these funds."
 {¶ 42} Defendant generally asserts that the trial court erred by ordering an amount of restitution in a property case to an amount beyond that determined by the jury to have been unlawfully taken. While defendant contends he cannot be charged with the amounts contained in his forgery and uttering convictions, the State counters that the jury necessarily found defendant guilty of defrauding the victim of those amounts when they found him guilty of the charges. In any case, the defendant agreed to the amount of restitution and indeed begged the court's indulgence for release pending sentencing in order to earn money to pay it. Since defendant explicitly agreed to the amount of restitution due he cannot now claim the trial court erred in entering an order in that amount.
 {¶ 43} Assignment of Error III is overruled.
Judgment affirmed.
It is ordered that appellee recover from appellant its costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Court of Common Pleas to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
FRANK D. CELEBREZZE, JR., P.J., ANTHONY O. CALABRESE, JR., J., CONCUR