[Cite as *State v. Cornelius*, 2015-Ohio-4328.]

COURT OF APPEALS
RICHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|                          |   | JUDGES:                        |
|--------------------------|---|--------------------------------|
| STATE OF OHIO            | : | Hon. W. Scott Gwin, P. J.      |
|                          | : | Hon. William B. Hoffman, J.    |
| Plaintiff-Appellee       | : | Hon. John W. Wise, J.          |
|                          | : |                                |
| -vs-                     | : |                                |
|                          | : | Case No. 15CA13                |
| ROYCE DARNELL CORNELIUS  | : |                                |
|                          | : |                                |
| Defendant-Appellant      | : | O P I N I O N                  |

CHARACTER OF PROCEEDING:      Criminal appeal from the Richland County
Court of Common Pleas, Case No. 2014CR
0338 D

JUDGMENT:      Affirmed

DATE OF JUDGMENT ENTRY:      October 16, 2015

APPEARANCES:

For Plaintiff-Appellee

DANIEL ROGERS
Assistant Prosecuting Attorney
38 South Park Street
Mansfield, OH 44902

For Defendant-Appellant

WILLIAM BRINGMAN
13 East College Street
Fredericktown, OH 43019

*Gwin, P.J.*

**{¶1}** Appellant Royce Darnell Cornelius ["Cornelius"] appeals his conviction and sentence after a jury trial in the Richland County Court of Common Pleas on Receiving Stolen Property-Motor Vehicle, a fourth degree felony pursuant to R.C. 2913.51(A) and (C).

*Facts and Procedural History*

**{¶2}** On July 8, 2014, the Richland County Grand Jury indicted Cornelius on one (1) count of Receiving Stolen Property-Motor Vehicle, a fourth degree felony pursuant to R.C. 2913.51(A) & (C).  The following facts were presented during Cornelius's jury trial.

**{¶3}** Sometime between 2:00 pm and 3:00 pm on May 23, 2014, Rodney Mays left his house in Mansfield, Ohio and drove his blue 1997 Chevy Astro Van to McCune Cycle on Ashland Road to look for an ATV. Mays parked the van in the McCune Cycle parking lot and walked inside, accidentally leaving his keys inside of the vehicle.

**{¶4}** Michael Gortner arrived at McCune Cycle shortly after Mays. Gortner noticed a person later identified as Nicholas "Jay" Ray standing outside of McCune Cycle near the mailbox. Gortner became suspicious of Ray.  After speaking briefly with Ray, Gortner went inside to purchase supplies for his motorcycle and left Ray alone outside in the parking lot.

**{¶5}** Approximately 15 to 30 minutes after entering McCune Cycle, Mays realized his keys were inside the van. Upon exiting the store, Mays discovered the van missing from the parking lot. Mays went back inside the business and told the cashier and Gortner about the theft of his van.  Gortner then told Mays about encountering Ray

in the parking lot and Ray's strange behavior. Mays called the Mansfield Police Department and asked Gortner to stay at McCune Cycle to tell police about the encounter with Ray.

{¶6} Officer Kory Kaufman responded to the business at 3:04 p.m. and interviewed Mays and Gortner. Mays provided Officer Kaufman with a full description of his vehicle. Gortner provided a description of the man he encountered in the parking lot. Officer Kaufman suspected Ray, based upon Gortner's description, which matched a previous description of Ray. Officer Kaufman was aware that Ray had been suspected of stealing several vehicles in the area. Officer Kaufman used his computer to show Gortner several photos, including one of Ray. Gortner identified Ray as the man he saw in the McCune Cycle parking lot. Officer Kaufman put the description of the van over the radio and the computer. He also told his dispatcher to enter the vehicle into the NCIC database as stolen.

{¶7} A few hours later, Detective Frank Parrella, saw a van parked next to a trailer across from the apartment building at 1095 Longview Avenue. The van matched the description put out by Officer Kaufman as the missing Astro van. Detective Parrella ran the license plate and confirmed the van next to the trailer was the vehicle reported as stolen.

{¶8} Detective Parrella parked in front of a storage unit and watched the van. Approximately two minutes later, the vehicle pulled out and headed east on Longview Avenue toward Trimble Road. Detective Parrella followed the van. Detective Parrella was in an unmarked car so he called for back up to make the stop of the van.

{¶9}   As Detective Parrella and the stolen van traveled south on Trimble Road, Ohio State Trooper Gillum began following Detective Parrella, ultimately stopping the detective for speeding. After Detective Parrella explained the situation, he and Trooper Gillum resumed following the van until the vehicle pulled into the Speedway gas station. Detective Parrella and Trooper Gillum entered the Speedway parking lot, surrounding the van.   Cornelius was in the driver seat of the van. Detective Parrella and Trooper Gillum approached the van and held the four occupants at gunpoint until back up arrived.  After additional officers arrived, the four occupants were removed from the van and placed in separate squad cars.

{¶10}  Sergeant Don Rhinehart arrived at Speedway and interviewed Cornelius. Cornelius told Sergeant Rhinehart he did not know the reason for his arrest. Sergeant Rhinehart told Cornelius about someone stealing the Astro van. Cornelius stated he rented the van from "Raheem" for $50.00 and did not know about the van being stolen. Cornelius provided no other information concerning Raheem or the process of renting the vehicle from Raheem.

{¶11}  In the days following Cornelius' arrest, Officer Kaufman learned from Richland County Assistant Prosecutor Deb Woodward that Cornelius changed his story and claimed he rented the Astro van from a person known as "Jay." Officer Kaufman told Prosecutor Woodward that Cornelius's description of "Jay" matched Ray and Prosecutor Woodward suggested putting together a photo lineup. Upon seeing the photo lineup, Cornelius identified Ray as the "Jay" from whom he rented the van.

{¶12} Cornelius testified that he has rented vehicles from private parties numerous times in the past. He further testified that he provided a description that

matched that of Ray when he initially spoke to the police. Cornelius testified that he was unaware of Ray's criminal background. Lakeeron Lane and Searia Mason each testified on Cornelius's behalf that they have also rented vehicles both to and from private individuals in the past and did not inspect driver licenses or insurance documents before concluding the transactions.

{¶13} After deliberations, the jury found Cornelius guilty of Receiving Stolen Property-Motor Vehicle, a fourth degree felony pursuant to R.C. 2913.51(A) and (C).

{¶14} On February 2, 2015, the trial court sentenced Cornelius to 14 months incarceration and 3 years of discretionary post-release control.

*Assignments of Error*

{¶15} Cornelius raises one assignment of error,

{¶16} "I. THE TRIAL COURT ERRED IN ITS RENDERING ITS JUDGMENT OF CONVICTION OF FEBRUARY 3, 2015."

*Analysis*

{¶17} Cornelius' sole assignment of error relates to the propriety of the trial court's rendering its judgment of conviction. Subsumed within this generalized objection are four challenges. Specifically, Cornelius contends that: (1) the judgment of conviction is not supported by the greater weight of the evidence; (2) Cornelius was denied effective assistance of counsel; (3) the trial court erred in permitting the state to use leading questions during its case-in-chief; and (4) the trial court erred by failing to sua sponte instruct the jury that it is not required to render a verdict.

**1. Manifest weight of the evidence.**

{¶18} Our review of the constitutional sufficiency of evidence to support a criminal conviction is governed by *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), which requires a court of appeals to determine whether "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Id.; see also *McDaniel v. Brown*, 558 U.S. 120, 130 S.Ct. 665, 673, 175 L.Ed.2d 582(2010) (reaffirming this standard); *State v. Fry*, 125 Ohio St.3d 163, 926 N.E.2d 1239, 2010–Ohio–1017, ¶146; *State v. Clay*, 187 Ohio App.3d 633, 933 N.E.2d 296, 2010–Ohio–2720, ¶68.

{¶19} Weight of the evidence addresses the evidence's effect of inducing belief. *State v. Thompkins*, 78 Ohio St.3d 380, 386-387, 678 N.E.2d 541 (1997), *superseded by constitutional amendment on other grounds as stated by State v. Smith,* 80 Ohio St.3d 89, 684 N.E.2d 668, 1997-Ohio–355. Weight of the evidence concerns "the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue, which is to be established before them. Weight is not a question of mathematics, but depends on its effect in inducing belief." (Emphasis sic.) Id. at 387, 678 N.E.2d 541, *quoting* Black's Law Dictionary (6th Ed. 1990) at 1594.

{¶20} When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a "'thirteenth juror'" and disagrees with the fact finder's resolution of the conflicting

testimony. Id. at 387, 678 N.E.2d 541, *quoting Tibbs v. Florida*, 457 U.S. 31, 42, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982). However, an appellate court may not merely substitute its view for that of the jury, but must find that "'the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *State v. Thompkins, supra*, 78 Ohio St.3d at 387, *quoting State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717, 720–721 (1st Dist. 1983). Accordingly, reversal on manifest weight grounds is reserved for "'the exceptional case in which the evidence weighs heavily against the conviction.'" Id.

"[I]n determining whether the judgment below is manifestly against the weight of the evidence, every reasonable intendment and every reasonable presumption must be made in favor of the judgment and the finding of facts.

* * *

"If the evidence is susceptible of more than one construction, the reviewing court is bound to give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the verdict and judgment."

*Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984), fn. 3, *quoting* 5 Ohio Jurisprudence 3d, Appellate Review, Section 60, at 191–192 (1978).

{¶21} Cornelius claims that his testimony is not outweighed by the evidence presented by the state.

{¶22} Cornelius was convicted of receiving stolen property. R.C. 2913.51 states, in part,

(A) No person shall receive, retain, or dispose of property of another knowing or having reasonable cause to believe that the property has been obtained through commission of a theft offense.

**{¶23}** R.C. 2901.22 defines "knowingly" as follows:

(B) A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist.

**{¶24}** Whether a person acts knowingly can only be determined, absent a defendant's admission, from all the surrounding facts and circumstances, including the doing of the act itself." *State v. Huff*, 145 Ohio App.3d 555, 563, 763 N.E.2d 695(1st Dist. 2001) (footnotes omitted). Thus, "[t]he test for whether a defendant acted knowingly is a subjective one, but it is decided on objective criteria." *State v. McDaniel*, 2nd Dist. Montgomery No. 16221, 1998 WL 214606 (May 1, 1998) (citing *State v. Elliott*, 104 Ohio App.3d 812, 663 N.E.2d 412(10th Dist. 1995)).

**{¶25}** R.C. 2925.01(K) defines possession as follows: "'Possess' or 'possession' means having control over a thing or substance, but may not be inferred solely from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found." R.C. 2901.21 provides the requirements for criminal liability and provides that possession is a "voluntary act if the possessor knowingly procured or received the thing possessed, or was aware of the possessor's control of the thing possessed for sufficient time to have ended possession." R.C. 2901.21(D)(1).

**{¶26}** In the case at bar, the state presented evidence that Mays' van had been stolen from the parking lot of McCune Cycle on May 23, 2014. The state further presented evidence that Ray had been standing in the parking lot of the motorcycle shop behaving strangely. Cornelius was in possession of the stolen van when he was seated in the driver seat of the van when approached by Detective Parrella and Officer Kaufman. Cornelius admitted possessing the van; however, he denied knowing that it had been stolen.

**{¶27}** Sergeant Rhinehart testified that Cornelius claimed he rented the vehicle for $50 from a "Raheem," yet could provide no further details regarding Raheem or the rental agreement. Cornelius testified during trial that he did not receive or provide any insurance information, driver's license information, or any other type of documentation when he rented the van. Following his arrest and initial interview, Cornelius changed his story. Upon viewing a photo array, Cornelius identified Ray, a well-known car thief throughout Richland County, as the man from whom he had rented the van.

**{¶28}** If the state relies on circumstantial evidence to prove an essential element of an offense, it is not necessary for "such evidence to be irreconcilable with any reasonable theory of innocence in order to support a conviction." *State v. Jenks*, 61 Ohio St.3d 259, 272, 574 N.E. 2d 492(1991), paragraph one of the syllabus, *superseded by State constitutional amendment on other grounds as stated in State v. Smith*, 80 Ohio St.3d 89, 684 N.E.2d 668(1997). "Circumstantial evidence and direct evidence inherently possess the same probative value [.]" *Jenks*, 61 Ohio St.3d at paragraph one of the syllabus. Furthermore, "[s]ince circumstantial evidence and direct evidence are indistinguishable so far as the jury's fact-finding function is concerned, all

that is required of the jury is that i[t] weigh all of the evidence, direct and circumstantial, against the standard of proof beyond a reasonable doubt." *Jenks*, 61 Ohio St.3d at 272, 574 N.E. 2d 492. While inferences cannot be based on inferences, a number of conclusions can result from the same set of facts. *State v. Lott*, 51 Ohio St.3d 160, 168, 555 N.E.2d 293(1990), citing *Hurt v. Charles J. Rogers Transp. Co*, 164 Ohio St. 329, 331, 130 N.E.2d 820(1955). Moreover, a series of facts and circumstances can be employed by a jury as the basis for its ultimate conclusions in a case. *Lott,* 51 Ohio St.3d at 168, 555 N.E.2d 293, citing *Hurt,* 164 Ohio St. at 331, 130 N.E.2d 820.

{¶29} Viewing the evidence in a light most favorable to the prosecution, we conclude that a reasonable person could have found beyond a reasonable doubt that Cornelius committed the crime of receiving stolen property. We hold, therefore, that the state met its burden of production regarding each element of the crime of receiving stolen property and, accordingly, there was sufficient evidence to support Cornelius' conviction for receiving stolen property.

{¶30} As an appellate court, we are not fact finders; we neither weigh the evidence nor judge the credibility of witnesses. Our role is to determine whether there is relevant, competent and credible evidence upon which the fact finder could base his or her judgment. *Cross Truck v. Jeffries*, 5th Dist. No. CA–5758, 1982 WL 2911(Feb. 10, 1982). Accordingly, judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence. *C.E. Morris Co. v. Foley Construction*, 54 Ohio St.2d 279, 376 N.E.2d 578(1978). The Ohio Supreme Court has emphasized: "'[I]n determining whether the judgment below is manifestly against the weight of the

evidence, every reasonable intendment and every reasonable presumption must be made in favor of the judgment and the finding of facts. * * *.'" *Eastley v. Volkman*, 132 Ohio St.3d 328, 334, 972 N.E. 2d 517, 2012-Ohio-2179, *quoting Seasons Coal Co., Inc. v. Cleveland,* 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984), fn. 3, quoting 5 Ohio Jurisprudence 3d, Appellate Review, Section 603, at 191–192 (1978). Furthermore, it is well established that the trial court is in the best position to determine the credibility of witnesses. See, e.g., *In re Brown*, 9th Dist. No. 21004, 2002–Ohio–3405, ¶ 9, citing *State v. DeHass*, 10 Ohio St .2d 230, 227 N.E.2d 212(1967).

{¶31} Ultimately, "the reviewing court must determine whether the appellant or the appellee provided the more believable evidence, but must not completely substitute its judgment for that of the original trier of fact 'unless it is patently apparent that the fact finder lost its way.'" *State v. Pallai*, 7th Dist. Mahoning No. 07 MA 198, 2008-Ohio-6635, ¶31, *quoting State v. Woullard*, 158 Ohio App.3d 31, 2004-Ohio-3395, 813 N.E.2d 964 (2nd Dist. 2004), ¶ 81. In other words, "[w]hen there exist two fairly reasonable views of the evidence or two conflicting versions of events, neither of which is unbelievable, it is not our province to choose which one we believe." *State v. Dyke*, 7th Dist. Mahoning No. 99 CA 149, 2002-Ohio-1152, at ¶ 13, *citing State v. Gore*, 131 Ohio App.3d 197, 201, 722 N.E.2d 125(7th Dist. 1999).

{¶32} The weight to be given to the evidence and the credibility of the witnesses are issues for the trier of fact. *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212(1967), paragraph one of the syllabus; *State v. Hunter*, 131 Ohio St.3d 67, 2011-Ohio-6524, 960 N.E.2d 955, ¶118. *Accord, Glasser v. United States*, 315 U.S. 60, 80,

62 S.Ct. 457, 86 L.Ed. 680 (1942); *Marshall v. Lonberger*, 459 U.S. 422, 434, 103 S.Ct. 843, 74 L.Ed.2d 646 (1983).

{¶33} The jury as the trier of fact was free to accept or reject any and all of the evidence offered by the parties and assess the witness's credibility. "While the jury may take note of the inconsistencies and resolve or discount them accordingly * * * such inconsistencies do not render defendant's conviction against the manifest weight or sufficiency of the evidence." *State v. Craig*, 10th Dist. Franklin No. 99AP-739, 1999 WL 29752 (Mar 23, 2000) *citing State v. Nivens*, 10th Dist. Franklin No. 95APA09-1236, 1996 WL 284714 (May 28, 1996). Indeed, the jury need not believe all of a witness' testimony, but may accept only portions of it as true. *State v. Raver*, 10th Dist. Franklin No. 02AP-604, 2003-Ohio-958, ¶21, *citing State v. Antill*, 176 Ohio St. 61, 67, 197 N.E.2d 548 (1964); *State v. Burke*, 10th Dist. Franklin No. 02AP-1238, 2003-Ohio-2889, *citing State v. Caldwell*, 79 Ohio App.3d 667, 607 N.E.2d 1096 (4th Dist. 1992). Although the evidence may have been circumstantial, we note that circumstantial evidence has the same probative value as direct evidence. *State v. Jenks*, supra.

{¶34} We find that this is not an "'exceptional case in which the evidence weighs heavily against the conviction.'" *Thompkins*, 78 Ohio St.3d at 387, 678 N.E.2d 541, *quoting Martin*, 20 Ohio App.3d at 175, 485 N.E.2d 717. The jury neither lost his way nor created a miscarriage of justice in convicting Cornelius of the charges.

{¶35} Based upon the foregoing and the entire record in this matter, we find Cornelius' conviction is not against the sufficiency or the manifest weight of the evidence. To the contrary, the jury appears to have fairly and impartially decided the matters before them. The jury as a trier of fact can reach different conclusions

concerning the credibility of the testimony of the state's witnesses and Cornelius and his witnesses. This court will not disturb the jury's finding so long as competent evidence was present to support it. *State v. Walke*r, 55 Ohio St.2d 208, 378 N.E.2d 1049 (1978). The jury heard the witnesses, evaluated the evidence, and was convinced of Cornelius' guilt.

{¶36} Finally, upon careful consideration of the record in its entirety, we find that there is substantial evidence presented which if believed, proves all the elements of the crime beyond a reasonable doubt.

**2. Ineffective assistance of trial counsel and leading questions.**

{¶37} Cornelius next argues that he received ineffective assistance of counsel because his trial counsel failed to object to hearsay and leading questions during the state's case-in-chief. Cornelius further contends the trial court erred in permitted the state to use leading questions.

{¶38} A claim of ineffective assistance of counsel requires a two-prong analysis. The first inquiry is whether counsel's performance fell below an objective standard of reasonable representation involving a substantial violation of any of defense counsel's essential duties to appellant. The second prong is whether the appellant was prejudiced by counsel's ineffectiveness. *Lockhart v. Fretwell*, 506 U.S. 364, 113 S.Ct. 838, 122 L.Ed.2d 180(1993); *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674(1984); *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373(1989).

{¶39} In order to warrant a finding that trial counsel was ineffective, the petitioner must meet both the deficient performance and prejudice prongs of *Strickland* and

*Bradley. Knowles v. Mirzayance*, 556 U.S. 111, 129 S.Ct. 1411, 1419, 173 L.Ed.2d 251(2009).

**{¶40}** Recently, the United States Supreme Court discussed the prejudice prong of the *Strickland* test,

> With respect to prejudice, a challenger must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id., at 694, 104 S.Ct. 2052. It is not enough "to show that the errors had some conceivable effect on the outcome of the proceeding." Id., at 693, 104 S.Ct. 2052. Counsel's errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Id., at 687, 104 S.Ct. 2052.

> "Surmounting Strickland's high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. ——, ——, 130 S.Ct. 1473, 1485, 176 L.Ed.2d 284 (2010). An ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial, and so the *Strickland* standard must be applied with scrupulous care, lest "intrusive post-trial inquiry" threaten the integrity of the very adversary process the right to counsel is meant to serve. *Strickland*, 466 U.S., at 689–690, 104 S.Ct. 2052. Even under de novo review, the standard for judging counsel's representation is a most deferential one. Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of

materials outside the record, and interacted with the client, with opposing counsel, and with the judge. It is "all too tempting" to "second-guess counsel's assistance after conviction or adverse sentence." Id., at 689, 104 S.Ct. 2052; *see also Bell v. Cone*, 535 U.S. 685, 702, 122 S.Ct. 1843, 152 L.Ed.2d 914 (2002); *Lockhart v. Fretwell*, 506 U.S. 364, 372, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993). The question is whether an attorney's representation amounted to incompetence under "prevailing professional norms," not whether it deviated from best practices or most common custom. *Strickland*, 466 U.S., at 690, 104 S.Ct. 2052.

*Harrington v. Richter,* __U.S.__, 131 S.Ct. 770, 777-778, 178 L.Ed.2d 624(2011).

{¶41} "'The failure to object to error, alone, is not enough to sustain a claim of ineffective assistance of counsel.' " *State v. Fears*, 86 Ohio St.3d 329, 347, 715 N.E.2d 136(1999), *quoting State v. Holloway* (1988), 38 Ohio St.3d 239, 244, 527 N.E.2d 831(1988). A defendant must also show that he was materially prejudiced by the failure to object. *Holloway*, 38 Ohio St.3d at 244, 527 N.E.2d 831. *Accord, State v. Hale*, 119 Ohio St.3d 118, 2008-Ohio-3426, 892 N.E.2d 864, ¶233.

{¶42} The Rules of Evidence provide in Rule 611(C):

(C) Leading questions. Leading questions should not be used on the direct examination of a witness except as may be necessary to develop his testimony. Ordinarily leading questions should be permitted on cross-examination. When a party calls a hostile witness, an adverse party, or a witness identified with an adverse party, interrogation may be by leading questions.

**{¶43}** It is within the discretion of the trial court to permit the state to ask leading questions of its own witnesses. *State v. Miller*, 44 Ohio App.3d 42, 45, 541 N.E.2d 105(6th Dist. 1988); *State v. Madden*, 15 Ohio App.3d 130, 133, 472 N.E.2d 1126(12th Dist. 1984). As the court As stated in *State v. Lewis*, 4 Ohio App.3d 275, 278, 448 N.E.2d 487, 490(3rd Dist. 1982), "[t]he exception 'except as may be necessary to develop his testimony' is quite broad and places the limits upon the use of leading questions on direct examination within the sound judicial discretion of the trial court." This form of questioning is routinely allowed and any objection undoubtedly would have been overruled.

**{¶44}** The majority of questions cited by Cornelius are non-prejudicial background questions or simply re-stating the answer given by the witness (T. at 123, 1124; 126; 133; 135; 139; 150; 151; 163; 170-171) Other questions cited by Cornelius concerned the location of persons or vehicles. (T. 140; 144; 146; 147; 158; 160). Hearsay concerns are not prejudicial because Gortner subsequently testified (T. at 131, 141). Further Cornelius testified that he subsequently identified Ray as the person from whom he obtained the van. (T. at 150).

**{¶45}** After a careful review of the record, this court cannot find that the trial court erred in permitting the limited use of leading questions or that trial counsel was ineffective in his representation in the argued object to the prosecutor's use of leading questions, or non-prejudicial hearsay.

**3. Jury instructions.**

**{¶46}** Cornelius next contends that the trial court erred by not instructing the jury that they are not required to render a verdict.

{¶47} "[A]fter arguments are completed, a trial court must fully and completely give the jury all instructions which are relevant and necessary for the jury to weigh the evidence and discharge its duty as the fact finder." *State v. Comen*, 50 Ohio St. 3d 206, 553 N.E.2d 640(1990), paragraph two of the syllabus.

{¶48} Rule 30 of the Ohio Rules of Criminal Procedure provides that a party must object to an omission in the court's instructions to the jury in order to preserve the error for appeal. "A criminal defendant has a right to expect that the trial court will give complete jury instructions on all issues raised by the evidence." *State v. Williford*, 49 Ohio St. 3d 247, 251-252, 551 N.E.2d 1279(1990). (Citations omitted). Where the trial court fails to give complete or correct jury instructions the error is preserved for appeal when defendant objects, whether or not there has been a proffer or written jury instruction offered by the defendant. (Id.). Even if an objection is not made in accordance with Rule 30 of the Ohio Rules of Criminal Procedure, or a written jury instruction is required to be offered by the defendant, Rule 52(B) of the Ohio Rules of Criminal Procedure, the so-called "plain-error doctrine" applies to the failure of the court to properly instruct the jury on "all matters of law necessary for the information of the jury in giving its verdict…" pursuant to Section 2945.11 of the Ohio Revised Code. *See, State v. Williford, supra*; *State v. Gideons*, 52 Ohio App. 2d 70, 368 N.E.2d 67(8th Dist. 1977).

{¶49} In *Neder v. United States*, 527 U.S. 1, 119 S.Ct. 1827, 144 L.Ed.2d 25(1999), the United State Supreme Court held that because the failure to properly instruct the jury is not in most instances structural error, the harmless-error rule of *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705(1967) applies to a

failure to properly instruct the jury, for it does not necessarily render a trial fundamentally unfair or an unreliable vehicle for determining guilt or innocence.

**{¶50}** In the case at bar, Cornelius concedes that he did not object nor did he request orally or in writing the limiting instruction that he now contends should have been given by the trial court. Accordingly, our review of the alleged error must proceed under the plain error rule of Crim. R. 52(B).

**{¶51}** In criminal cases where an objection is not raised at the trial court level, "plain error" is governed by Crim. R. 52(B), which states, "Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." An alleged error "does not constitute a plain error ... unless, but for the error, the outcome of the trial clearly would have been otherwise." *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804(1978), paragraph two of the syllabus.

**{¶52}** "[A]n appellate court may, in its discretion, correct an error not raised at trial only where the appellant demonstrates that (1) there is an error; (2) the error is clear or obvious, rather than subject to reasonable dispute; (3) the error affected the appellant's substantial rights, which in the ordinary case means it affected the outcome of the district court proceedings; and (4) the error seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." *United States v. Marcus*, 560 U.S. 258, 262 130 S.Ct. 2159, 176 L.Ed.2d 1012(2010)(internal quotation marks and citations omitted).

**{¶53}** The defendant bears the burden of demonstrating that a plain error affected his substantial rights. *United States v. Olano*, 507 U.S. at 725,734, 113 S.Ct. 1770, 123 L.Ed.2d 508(1993); *State v. Perry*, 101 Ohio St.3d 118, 120 802 N.E.2d

643(2004). Even if the defendant satisfies this burden, an appellate court has discretion to disregard the error. *State v. Barnes*, 94 Ohio St.3d 21, 27, 759 N.E.2d 1240 (2002); *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraph three of the syllabus; *Perry, supra*, at 118, 802 N.E.2d at 646.

{¶54} In *Kentucky v. Whorton*, the United States Supreme Court held,

Failure to give a requested instruction on the presumption of innocence does not in and of itself violate the Constitution; such failure must be evaluated in light of totality of circumstances, including all instructions to jury, arguments of counsel, whether weight of evidence was overwhelming, and other relevant factors, to determine whether defendant received a constitutionally fair trial.

441 U.S. 786, 789, 99 S.Ct. 2088, 60 L.Ed.2d 640(1979).

{¶55} In the case at bar, the jury was properly instructed that they must unanimously agree that Cornelius is guilty beyond a reasonable doubt of the charged offense before returning a verdict of guilty. The jury was further properly instructed on the presumption of innocence and that the jury is required to acquit Cornelius unless satisfied of guilt beyond a reasonable doubt.

{¶56} Cornelius fails to cite to any case law, statute or rule supporting his claim that the trial court should have instructed the jury on not being required to render a verdict. As discussed previously, Cornelius's conviction is not against the weight or the sufficiency of the evidence. Trial counsel for Cornelius argued that the state must prove beyond a reasonable doubt that Cornelius knew or had reason to believe the van was stolen before they could return a verdict of guilty. (T. at 246).

{¶57} In the case at bar, we find the trial court did not commit reversible error by failing to instruct the jury as Cornelius maintains nor does the disputed instruction rise to the level of plain error since the ultimate outcome of the trial would not have been different but for the disputed instruction. *State v. Long*, 53 Ohio St.2d 91, 97, 372 N.E.2d 804(1978).

{¶58} For all the foregoing reasons, Cornelius's sole assignment of error is overruled in its entirety. The judgment of the Richland County Court of Common Pleas is affirmed.

By Gwin, P.J.,

Hoffman, J., and

Wise, J., concur